IN THE MATTER OF ROBERT G. HOWELL, AN ATTORNEY AND COUNSELLOR-AT-LAW.

Argued June 23, 1952—Decided June 26, 1952.

For the order, *Mr. Robert Peacock*, Deputy Attorney General of New Jersey.

For the respondent, *Mr. Leroy W. Loder.*

PER CURIAM.  Respect for the law is the keystone of our democracy.  An attorney by tradition is an appropriate advocate of this truism and it behooves him to act accordingly and to exercise the utmost restraint under all circumstances. This is the theme of the Canons of Professional Ethics, explicitly set forth in the preamble thereto.  And Canon 29 provides, *inter alia,* that the lawyer "should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice"; in Canon 32 he is admonished "to observe the statute law" and advised that he "will find his highest honor in a deserved reputation for fidelity to public trust and to public duty."  It is axiomatic that it is extremely desirable that respectability of the bar should be maintained.

In the present case the respondent committed assault and battery and subsequently pleaded *non vult* thereto in criminal proceedings.  An attorney's responsibility is to the courts, the profession and the public, and his misconduct may

be of such a nature as to engender disrespect for the law which is his basic trust. No criticism of his professional conduct has been otherwise made.

■ The respondent violated the Canons of Professional Ethics. In the circumstances of the case he should be suspended from the practice of the law for a period of six months and until further order of this court.

WILLIAM J. BRENNAN, JR., J. (concurring). Robert G. Howell, an attorney and counsellor at law, was sentenced in the Cumberland County Court upon his plea of *non vult* to the lesser offense of simple assault and battery upon his indictment for an atrocious assault and battery. Thereupon an order to show cause was issued why he should not be disbarred or otherwise disciplined.

The assault was committed upon Shike Levine, editor of the *Bridgeton Bulletin*, a weekly newspaper. Mr. Howell, a resident of Hopewell but practicing in Bridgeton, is a leader of a political organization in Bridgeton styled the "Good Government Group," which is opposed by the *Bulletin*. Ralph Spoltare was elected a Bridgeton councilman with "Good Government" support. Mr. Spoltare suffered a heart attack on March 30, 1951, as a consequence of which he died a week later, on April 7, 1951. On the day before his death the weekly edition of the *Bulletin* carried an editorial saying among other things that, "It is unfortunate that the health of individuals suffer as the result of politics, but the sudden illness of Councilman Ralph Spoltare brings to focus this fact." "Spoltare has clashed with the G. G. colleagues." "This must have had some effect upon his emotional structure." "Spoltare at heart wanted to do what was good for the town, but the G. G. clique muzzled him." "Although he was elected on that label, many who observed him at meetings felt that in time he * * * would discover that the G. G. label was just a mask to disguise the real motives of the string-puller from Hopewell township." The reference to "string-puller from Hopewell township" was to Mr. Howell.

Mr. Howell read the editorial at his home on the evening of its publication. He went immediately to Mr. Levine's newspaper office, taking with him a length of rubber hose and a riding crop. He asked Mr. Levine's secretary to leave, and then beat Mr. Levine with the hose and riding crop about the back, neck and legs. Mr. Levine ran to the street after telephoning for a police officer. The men there engaged in fisticuffs until the police officer arrived and they were separated.

Mr. Howell filed an affidavit in these proceedings in an attempt to justify his conduct on the ground, "My judgment was badly overcome by emotions. I felt that I was being unfairly charged with causing a friend's death, his wife to be widowed and his children to be fatherless, that such had been done to me ruthlessly. I had received (word) that day that Spoltare could not possibly live, I was greatly distressed." It was conceded at the oral argument that an interval of about 40 minutes elapsed from the time Mr. Howell read the editorial until he reached Mr. Levine's office.

Ordinarily a lawyer convicted of a crime is subject to suspension or disbarment whether or not the offense was committed in his professional capacity, although the matter of discipline is made to depend upon the nature of the crime. Conviction of a crime involving moral turpitude almost always will result in discipline. The concept of what is moral turpitude is not·immutable but embraces a wide variety of crimes. 7 C. J. S., Attorney and Client, § 21, pp. 737–738. If it be arguable that assault and battery does not necessarily involve moral degeneration in the guilty lawyer, nonetheless it is a transgression which brings reproach to the profession, fosters public distrust of the bar and, worse, is a very menace to the administration of justice itself. We are a society governed by law, whose integrity it is the lawyer's special role to guard and champion. In that society there is no place for a personal code of justice. The preamble to the Canons of Professional Ethics observes "The future of the Republic, to a great extent, depends upon our maintenance

of Justice pure and unsullied. It cannot be so maintained unless the conduct and the motives of the members of our profession are such as to merit the approval of all just men." Canon 29 obligates every member of the bar to "strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice." A lawyer who attempts to avenge real or fancied personal grievances by resort to a personal code offensive to the criminal laws is deficient in that degree of fair private and professional character that the public rightly expects of every member of the bar. His office is a very badge of respectability and his conduct sullies the office. He "invites and merits stern and just condemnation." *Cf. Canon 32.* His conduct perforce imperils not him alone but the honor and integrity of his profession which depends for its very existence upon public trust and confidence. The spectacle of a lawyer criminating himself by the perpetration upon another of an assault instead of redressing his alleged grievances under law, necessarily prejudices, in the eyes of "just men," not him alone, but his fellows also. Discipline must be imposed not primarily to punish him but to give assurance to the public that the profession is deserving of its trust and confidence and will demand that all lawyers meticulously adhere to the high standards imposed by the profession upon itself.

It should be noted that upon Mr. Howell's admission to the bar he took a solemn oath "that I will faithfully and honestly demean myself in the practice" of the office. *C. S. p. 3769, sec. 6; R. S. 2:20–1,* now supplanted by *N. J. S. 2A:13–1.* The redress of wrongs according to a private code is plainly not good demeanor.

That Mr. Howell may have been enraged by what to him were unfair imputations of responsibility for his friend's death cannot excuse him. In the interval of 40 minutes before arriving at Mr. Levine's office there was ample time within which to bring his emotions under control and realize

that a stigma upon him and his profession was bound to follow in the wake of what he was proposing to do.

I agree that Mr. Howell be suspended from the practice of the law for a period of six months and until the further order of this court.

VANDERBILT, C. J., joins in this opinion.

*For suspension for six months and until further order*— Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.