IN THE MATTER OF WILLIAM GENSER, A MEMBER OF THE BAR OF THE STATE OF NEW JERSEY.

Argued January 18, 1954—Decided June 7, 1954.

*Mr. James A. Major* argued the cause for the Ethics and Grievance Committee for Bergen County.

*Mr. Herbert L. Smith* argued the cause for the respondent William Genser.

PER CURIAM. William Genser was admitted in this State as an attorney-at-law in April 1937, and as a counsellor-at-law in October 1941, and has maintained offices at Teaneck and at Leonia, both in Bergen County, New Jersey.

In a presentment filed by the Ethics and Grievance Committee for Bergen County, Genser was charged with unethical and unprofessional conduct. *R. R.* 1:16–4(*h*). An order to show cause why he should not be disbarred or otherwise disciplined was issued.

The violations of ethics and unprofessional conduct charged to Genser were: (1) violation of Canon 6, in that he allegedly permitted his personal interests to conflict with those of a client; (2) violation of Canon 11, in that he allegedly dealt with property of a client to his own advantage; (3) violation of Canon 22, in that he allegedly falsely represented himself to be the attorney of another and thereby obtained the moneys which were allegedly misappropriated; and (4) that Genser signed his name as witness to a concededly forged signature on a written contract.

Although the presentment alleged violation of specific canons, however in the consideration of such presentment the following paragraph of the Preamble of the *Canons of Professional Ethics* is pertinent:

"No code or set of rules can be framed, which will particularize all the duties of the lawyer in the varying phases of litigation or in all the relations of professional life. The following canons of ethics are adopted by the American Bar Association as a general guide, yet the enumeration of particular duties should not be construed as a denial of the existence of others equally imperative, though not specifically mentioned."

In this case the presentment charged the respondent with being guilty of unprofessional conduct based on transactions set forth in the presentment and the testimony taken before the Ethics and Grievance Committee for Bergen County, of

which presentment and evidence the respondent was fully cognizant.

■ An attorney's responsibility is to the courts, the profession and the public, and his misconduct may be of such a nature as to engender disrespect for the law which is his basic trust. *In re Howell*, 10 *N. J.* 139, 140–141 (1952).

The facts in this case are that Alfred L. Weiss and Samuel Goldwasser, New York attorneys, were associated with others as Ramsey Associates. A proposed project of Ramsey Associates was for the construction of a restaurant and other facilities on a tract of land at Ramsey, New Jersey, acquired by Mynard E. Greene, a local real estate broker and contractor. Greene transferred his interest to one Kaplan who in turn transferred his interest to Ramsey Associates.

Weiss and Goldwasser contracted with Greene to clear the land and erect a sign on the property. The price Greene was to receive was $1830 ($250 of which was for the sign). Green hired Lucien J. Luckel to supervise the clearing work. The work began. Greene became critically ill. Mrs. Greene asked Maurice H. Ludwin (an attorney and real estate broker interested with Greene in brokerage transactions relating to the project) and Genser to "take care of things," as they were long standing friends of the Greenes. Weiss and Goldwasser heard that dirt fill was being taken onto the property, which they contended was not compliance with their agreement with Greene. They immediately proceeded from New York City to the project and they ordered Luckel to stop work. Ludwin and Genser were also present. Whether there was any representation that Genser represented anyone does not clearly appear. The reason why Genser was present is not definitely established although it would seem throughout the affair he was not acting in the capacity of a lawyer but of one seeking to interlope on some prospective business ventures. Luckel demanded money to meet immediate payrolls (the expense of the work was expressed to be then upwards of $5000). Weiss and Goldwasser delivered to Genser $1830 by two checks to his order as "attorney," one for $500 and the second for $1330. Goldwasser testified "that

is what we wanted him to act, as attorney for Greene, to hold the money for Mr. Greene." Ludwin, though not positive, testified to the effect that he (Ludwin) suggested that Genser hold the money. It seems from all the evidence that it was too late for Weiss and Goldwasser to obtain cash elsewhere and that Genser immediately cashed a check for $500 with money there on his person. Weiss testified that the $500 check could have been for Luckel to meet his current payroll. It appears that Genser cashed the other check, $1330, on the following Monday.

Luckel gave Genser receipts for $800 which amount he admittedly received. Subsequently Mrs. Greene gave Genser a receipt for $250 for the sign hereinbefore referred to which money she admittedly received. The balance of $780 ($1830 less the $800 and $250 payments for which he received receipts) Genser testified he paid to Luckel without obtaining receipts. Luckel denied this. Genser is to some degree corroborated by a Mr. Berger, who was a contractor casually associated businesswise with Genser and Luckel.

There is also testimony surrounding a written instrument between Greene and "Lucien J. Luckel and Associates" to which Greene's name was forged. Genser, Berger and Luckel had formed a corporation apparently named Luckel Construction Company primarily for anticipated and yearned for electrical work on the project. Luckel's testimony indicates that Berger and Genser were not associated with Luckel in "Lucien J. Luckel and Associates." In the brief of the Ethics and Grievance Committee the following statement appears: "* * * There is strong reason to believe that Genser forged both signatures * * *" (*i. e.*, Greene's and Luckel's signatures). Except as to the fact of forgery by someone of Greene's name, the evidence was conflicting. Greene testified he found the instrument with a deed for the Ramsey Associates' tract, which deed he received from a Mr. Lipton, Ludwin's real estate business associate. Lipton testified he examined the deed before delivery and the purported agreement was not with it. Luckel testified the written instrument contained the terms of his personal contract

with Greene. Greene was not questioned in this respect. Genser testified Luckel signed the instrument. Luckel testified he thought he did not sign, but in some respects it looked like his signature—but his signature changed so often he could not be sure. Genser's signature as witness is directly across from Luckel's and not opposite either the written or typed name of Greene. As to this instrument, the testimony shows Luckel to be evasive and self-contradictory. Handwriting experts' opinions requested to be obtained for the court indicate Genser did not sign either Greene's or Luckel's name.

· Genser during the pendency of a suit by Luckel against Greene, Stein and others upon his alleged agreement with Greene concerning the Ramsey Associates project hereinabove referred to, paid $1500 to I. William Aronsohn, a member of the Bar of this State, in lieu of deposit in court of the $780, for which he had no receipts. The reason for setting the figure of $1500 is in doubt. The above-mentioned action in which Luckel is plaintiff was still pending at the time of argument of the rule to show cause in this case, but was dismissed on February 2, 1954, on stipulation of the parties.

It does not clearly appear that either Luckel or Greene was Genser's client nor that Genser represented to Weiss and Goldwasser that he was anyone's attorney. The evidence warrants a conclusion that Genser became attorney in fact. of Weiss and Goldwasser to distribute moneys for work Luckel was supervising for Greene hereinbefore mentioned. He failed to obtain receipts for $780 from Luckel.

The sum and substance of the evidence makes no clear-cut case of the specific violations charged. However, it is clear that Genser, in his transactions with other lawyers and with Greene and Luckel, acted in disregard of his duty to comport himself with candor and fairness to the principals in this endeavor. In handling the funds belonging to others which had come into his hands by virtue of the confidence reposed in him not only as a friend of Greene but also upon his status of an attorney-at-law of this State, he failed promptly to account therefor, although there is no evidence that he

used any portion thereof for his personal advantage, or intended so to do. He witnessed Luckel's signature to a document which was indicative of importance to a former client (Greene) and to a new business associate (Luckel), whom he served to the extent of drawing the instrument although that associate had other counsel. There seems to be doubt in the evidence in the drafting of the agreement between Luckel and Greene, whether Genser's action at Luckel's request had been of the relationship of attorney and client between Genser and Luckel. The manner of fixation of his witnessing signature to the instrument was not in accord with usual practice.

### CONCLUSION

A relationship of attorney and client was not established. Specific charges of unprofessional conduct in that strict relationship fall. Detailed violation number (3), *ante,* namely Genser's alleged representation that he was attorney for another (Greene) is not established. The remainder of that allegation, that he obtained moneys belonging to another and allegedly misappropriated them, is otherwise referred to herein.

The conduct and the motive of attorneys must be such as to merit the approval of all just men. They should strive at all times to uphold the honor and to maintain the dignity of the profession.

If an attorney wishes to be a business man as well as perform the precise functions of a lawyer, he must act in the transactions with the high standards of his profession and not with an "arm's length" and lapsable attitude.

The fiduciary obligation of the lawyer applies to persons who, although not strictly clients, he has or should have reason to believe rely on him. *Drinker, Legal Ethics* (1953), p. 92.

Canon 11, *supra,* inhibits the lawyer from taking personal gain or advantage from a confidence reposed in him by a client. It further provides:

"Money of the client or collected for the client *or other trust property coming into the possession of the lawyer should be reported and accounted for promptly*, and should not be commingled with his own or be used by him."

Mr. Justice Wachenfeld stated the norm in *In re Honig*, 10 *N. J.* 74, 78 (1952), in this respect as follows:

"All fiduciaries are held to a duty of fairness, good faith and fidelity, but an attorney is held to an even higher degree of responsibility in these matters than is required of all others."

The evidence clearly and convincingly shows that Genser was guilty of unprofessional conduct.

*Article* VI, *Section* II, *paragraph* 3 of the *Constitution of* 1947 provides:

"The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."

This duty is imposed for the protection of society and to uphold a respected evaluation and the traditions of the legal profession.

For such unprofessional conduct, William Genser will be suspended for a period of two months and until further order of the court.

*For suspension for two months*—Justices WACHENFELD, BURLING, JACOBS and BRENNAN—4.

*For reprimand*—Justices HEHER and OLIPHANT—2.