## IN THE MATTER OF BENJAMIN FRANKLIN, III, AN ATTORNEY-AT-LAW.

Argued April 6, 1976—Decided November 16, 1976.

*Mr. Donald M. Malehorn* argued the cause for Morris County Ethics Committee.

*Mr. Richard L. Amster* argued the cause for respondent (*Messrs. Amster & Levin,* attorneys).

PER CURIAM. The respondent, an attorney at law of this State, was the subject of a complaint, filed with the Morris County Ethics Committee, that charged him with submitting "exaggerated, fraudulent, or non-existent" expenses on his weekly reports, between January 1, 1973 and July 21, 1973, to the Rockaway Corporation, of which he was president and chief executive officer. This conduct allegedly violated (1) DR 1-102(A)(3) which provides a lawyer shall not "[e]ngage in illegal conduct that adversely reflects on his fitness to practice law" and (2) DR 1-102(A)(4) which prohibits a lawyer from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation."

In his answer the respondent conceded that he could not substantiate these expenses. However, he denied any violations of the Disciplinary Rules and claimed that his dispute with the Rockaway Corporation had been settled.

Although no testimony was presented at the formal hearing before the Ethics Committee, an Agreed Statement of Facts between the Ethics Committee's prosecutor and the respondent was admitted into evidence with three exhibits. These exhibits included the settlement agreement between the Rockaway Corporation and respondent, a report of Peat, Marwick, Mitchell & Co., certified public accountants, submitted to the Rockaway Corporation, and 12 weekly expense vouchers which respondent had submitted to the Corporation between May 12, 1973 and July 21, 1973. After the hearing respondent submitted an affidavit in which he acknowledged that "some of the claimed reimbursements were insupportable."

On the basis of this record the Morris County Ethics Committee submitted a presentment to this Court in which it found that respondent had submitted fraudulent expense vouchers to his employer between January and July 1973 and had received "reimbursement in substantial amounts for entertainment expenses which he never incurred." The Com-

mittee concluded that this conduct violated DR 1–102(A)(3) and (4).

Respondent had practiced law in this State between 1947 and 1960. He then became general counsel and secretary to the Rockaway Corporation's corporate predecessor. On January 1, 1966, he was elected president and chief executive officer of the Corporation and continued in that capacity until August 3, 1973. He has not practiced law since January 1, 1966.

As an emolument of his position respondent was entitled to reimbursement of business expenses incurred for entertainment, food and liquor. The annual amounts which he incurred between 1966 and 1972 for these purposes ranged between $13,538 and $67,384. In the period between January 1, 1973 and July 23, 1973, these expenses totaled $44,037. The stipulated facts before the Ethics Committee included the assertion that "[n]either party to this stipulation is prepared to factually prove or disprove the validity of" any of these reimbursements. However, the letter report sent to the Rockaway Corporation by Peat, Marwick, Mitchell & Co. recited that individuals whom respondent claimed to have entertained were asked to verify the occasions. Based on the oral responses, no support for $11,775 out of the $44,037 of the 1973 expenses was found. In making this calculation the accountants included as unsupportable expenses those which were claimed for group meetings after at least half of the alleged participants had stated no meeting occurred.

The settlement agreement recited that differences had arisen between the Corporation and respondent in connection with expenses, for which respondent had been reimbursed between 1966 and 1973, in the aggregate amount of approximately $319,000. The agreement provided that Franklin would pay $5,000 and assign to the Corporation his interests in two pension plans which had a total aggregate value, including respondent's contributions, of $46,000. In

return the Corporation released him from any expense account claims it might have had.

The third exhibit introduced at the hearing consisted of weekly expense reports between May 7, 1973 and July 21, 1973, with supporting itemized daily statements. No testimony or evidence was introduced concerning these expenditures, other than the accountant's hearsay report which did not specifically refer to the itemized information.

After the hearing respondent submitted an affidavit to the Committee in which he stated that the settlement agreement represented the mutual desire of the parties to reach an accommodation. He had refused to permit an admission of fraud to be inserted in the agreement and he would not agree that he "had defrauded or cheated Rockaway in any fashion." He "was not in possession of any facts or documentation which could assist in establishing the validity of claimed reimbursement." He did "acknowledge that some of the claimed reimbursements were insupportable," but he did not know "what portion was insupportable and what portion was in all respects legitimate."

We are satisfied, as the Committee found, that the proofs establish that the respondent deliberately overstated his expense account between January 1, 1973 and July 21, 1973 to the extent of $11,775. Indeed respondent concedes that some of the claimed reimbursements were overstated and unsupportable, although an unknown portion was "in all respects legitimate."

We are aware of the common practice of many companies to permit executives to be reimbursed for travel and expenses. Here Rockaway Corporation, a publicly held company listed on the American Stock Exchange, had reimbursed respondent substantial sums in prior years ($49,000 in 1970, $58,000 in 1971, and $67,000 in 1972). Peat, Marwick, Mitchell & Co., the Corporation's auditors in those years, never questioned these disbursements and the Committee's presentment acknowledged that there was no proof of the invalidity of such reimbursements. The quarrel arose

between the Corporation and respondent with respect to some expenditures during the first seven months of 1973, and the dispute was settled between the parties, the Corporation apparently having been satisfied with the reimbursement which it received.

■ ■ Although the commercial marketplace may accept such practices, we do not. The respondent was obligated to adhere to the high standard of conduct required of a member of the bar even though his activities did not involve the practice of law. *In re Ryan*, 66 *N. J.* 147, 150 (1974); *In re Carlsen*, 17 *N. J.* 338, 346 (1955); *In re Genser*, 15 *N. J.* 600, 606 (1954). We find that he is guilty of violating DR 1–102(A)(3) for conduct that adversely reflects on his fitness to practice law and DR 1–102(A)(4) for conduct involving dishonesty. The derelictions were not committed in his professional capacity, the dispute between respondent and his employer has been settled, and he has indicated that he has no intention of resuming the practice of law. We are not unmindful of his past substantial civic activities and prior unblemished record as a member of the bar. Under all the circumstances we believe a one year suspension is appropriate.

Respondent is hereby suspended for one year and until the further order of the Court.

CLIFFORD, J. (concurring in part and dissenting in part). While this Court may not always be the beneficiary of whatever blessings are secured by unanimity of decision, I think no one can be unmindful of the very considerable lengths to which we go in order to avoid a divergence of opinion in disciplinary matters. No other area of the law seems to inspire more flexibility among us in the quest for harmonious disposition.[1] Probably it is more effective as

---

[1] Indeed, in my more than three years on this Court I can recall only four instances out of forty-four reported disciplinary cases in which a minority opinion has been filed: *In re Lanza*, 65 *N. J.* 347,

well as more becoming that we speak with one voice in proceedings which call for the exercise of our regulatory powers over this State's attorneys. The desirability of avoiding confusion while furnishing guidance to the members of the bar is self-evident. It is therefore with no little regret that I find myself unable to agree that the discipline here imposed by the Court adequately reflects the severity of the offense.

Nothing could be clearer to me than that respondent was involved in a calculated and systematic scheme to bilk his own company. No indulgent reading of the record before us affords escape from the plain fact that he stole money from his employer — not on just a single occasion, but over an extended period. When discovered, he immediately resigned his position as president and chief executive officer and shortly thereafter negotiated with the company an agreement settling their differences. By means of that agreement he relinquished all retirement and pension rights and made a cash payment, in all amounting to about $52,000. In exchange the company gave respondent a release from any liability on account of all claims of the company surrounding reimbursed expenses during the entire period of his employment.

The Morris County Ethics Committee made a specific finding that respondent submitted vouchers and received reimbursement in substantial amounts for entertainment expenses which were never incurred. A report from Peat, Marwick, Mitchell & Co. verified that alleged recipients of respondent's entertainment efforts over a six months period had in fact not been so favored. These fictitious expenses amounted to $11,775 of a total of $44,087.32 reimbursed food, liquor and entertainment charges submitted for the period

353 (1974) ; *In re Rockoff*, 66 *N. J.* 394, 397 (1975) ; *In re Callan*, 66 *N. J.* 401, 408 (1975) ; and *In re Sears*, 71 *N. J.* 175 (1976). In the first three there were concurrences and in the last a concurrence and partial dissent.

January 1, 1973 to July 23, 1973. Respondent did not testify or personally appear before either the Committee or this Court. However, he did acknowledge in an affidavit filed with the Committee that some of the claimed reimbursements were "overstated" and "insupportable."

What all this amounts to is expense account cheating on a grand — if not very sophisticated — scale, and the Committee's finding of fraud properly supported its conclusion that both DR 1–102(A)(3) and DR 1–102(A)(4) had been violated. My own independent review of the record satisfies me by clear and convincing evidence that dishonesty, fraud, deceit and misrepresentation abounded. The fact that the transgressions occurred in other than a lawyer-client context is of no moment, *In re Belluscio,* 38 *N. J.* 355, 357–58 (1962).

In the present circumstances I am not at all prepared to accept respondent's suggestion that no situation has "less significance to the practice of law or the sustaining of the moral integrity of the Bar than a business dispute involving the overuse of an expense account." On the contrary (and quite apart from the fact that "overuse" here is a euphemism for deliberate distortion), an attorney's insensitivity to basic honesty in any context should be a matter of our deepest concern.

Whatever the conventional morality of the business world may be with respect to exaggerating or "padding" expense accounts, respondent's conduct exceeds what any reasonable indulgence would render tolerable. Irrespective of what ethics may prevail elsewhere, this Court should not look lightly upon the wrongdoing revealed in this record. These violations bespeak a callous disregard of that level of behavior demanded of members of our bar. In my opinion nothing less than a three years suspension from the practice of law is appropriate.

Judge CONFORD joins in this opinion.

*For suspension for one year*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, and SCHREIBER—4.

*Concurring and dissenting*—Justice CLIFFORD and Judge CONFORD—2.

ORDER

It is ORDERED that BENJAMIN FRANKLIN III of New York City be suspended from the practice of law for one year and until further order of the Court, effective immediately; and it is further

ORDERED that BENJAMIN FRANKLIN III be and hereby is restrained and enjoined from practicing law during the period of his suspension.