IN THE MATTER OF DENIS G. ADDONIZIO, AN ATTORNEY
AT LAW.

Argued October 12, 1983—Decided January 6, 1984.

*Colette A. Coolbaugh,* Counsel, argued the cause for complainant Disciplinary Review Board.

*Barry H. Evenchick* argued the cause for respondent (*Barry H. Evenchick,* attorney; *Barry H. Evenchick* and *A. Richard Ross, Jr.,* on the brief).

PER CURIAM.

Respondent entered a plea of guilty to criminal sexual contact in violation of *N.J.S.A.* 2C:14–3(b), an offense of the fourth degree. The court sentenced respondent to two years' probation and imposed a fine of $500 and court costs.

Subsequently, the District IX Ethics Committee investigated this matter for possible disciplinary action against respondent as. a member of the bar of New Jersey. Following a hearing, the District IX Ethics Committee issued a presentment, which concluded that the conduct to which Mr. Addonizio pleaded guilty constituted a crime and, therefore, constituted a violation of *DR* 1–102(A)(6).

After a hearing, the Disciplinary Review Board agreed that respondent had engaged in unethical conduct, and recommended that respondent be publicly reprimanded.

Our independent review of the entire record leads us to the conclusion that respondent has indeed been guilty of unethical conduct in the matter charged. However, while we attach considerable weight to the recommendation of the Disciplinary Review Board, it is our view that a three-month suspension more appropriately reflects the seriousness of respondent's misconduct and will adequately protect the public.

We recently restated the principles that we apply in cases of criminal conviction:

Our goal in these hearings is to protect the interests of the public and the bar while giving due consideration to the interests of the individual involved. *In re Mischlich,* 60 *N.J.* [590] at 593. Similar to a sentencing judge in a criminal matter, we take into consideration many factors in determining the proper discipline to be imposed. *Cf. N.J.S.A.* 2C:44–1. We consider the nature and severity of the crime, and whether the crime is related to the practice of law. We consider "evidence which does not dispute the crime but which shows mitigating circumstances [relevant to] the issue of whether the nature of the 'conviction merits discipline and, if so, the extent thereof.' " *In re Mischlich,* 60 *N.J.* at 593 (citations omitted); *see In re Rosen,* 88 *N.J.* [1] at 3; *In re Mirabelli,* 79 *N.J.* [597] at 601; *In re La Duca,* 62 *N.J.* [133] at 136. Similarly, we consider evidence of an attorney's good reputation, his prior trustworthy professional conduct, and his general good character. *In re Mischlich,* 60 *N.J.* at 593. [*In re Infinito,* 94 *N.J.* 50, 57 (1983).]

In pursuit of this goal, the District Committee and the Board considered the nature and severity of the crime and whether it was related to the practice of law. Although the relationship that gave rise to the offense arose indirectly from a lawyer-client relationship, the offense itself was not related to the practice of law. The conviction was of a fourth degree offense, which is the least serious grade of offense set forth in the Criminal Code. *N.J.S.A.* 2C:43–1. For such offenses the Legislature has established a presumption of non-imprisonment for first offenders. *N.J.S.A.* 2C:44–1e. In addition, the Board was convinced that the conviction represents an isolated instance that is unlikely to reoccur. In the Board's view, the combination of circumstances, including respondent's marital difficulties, prescribed drug use, consumption of alcohol and meeting the individuals involved, indicated that the incident would otherwise not have happened.

Yet we must accept a criminal conviction as conclusive evidence of guilt in disciplinary proceedings. *In re Rosen,* 88 *N.J.* 1, 3 (1981); *In re Mirabelli,* 79 *N.J.* 597, 602 (1979). The underlying facts of the conviction are relevant to the determination of the appropriate discipline to be imposed. *In re Rosen,* 88 *N.J.* at 3.

In setting the appropriate discipline, we are not interested in punishing the attorney. That is the province of the

criminal law. The primary purpose of professional discipline is "to protect the public against members of the bar who are unworthy of the trust and confidence essential to the relationship of attorney and client." *In re Sears,* 71 *N.J.* 175, 200 (1976) (quoting *In re Introcaso,* 26 *N.J.* 353, 360 (1958)). *Accord In re Stout,* 75 N.J. 321, 325 (1978). But

> [a]ny violation of the law creates some question about the trust and confidence that the public may reasonably be expected to repose in an attorney. No matter what the violation, some discipline may be needed to deter both the attorney involved and other members of the bar....
>
> Whether disbarment is the appropriate discipline depends on both the nature of the crime and the mitigating elements.
>
> [*In re Hughes,* 90 *N.J.* 32, 40–41 (1982) (Schreiber, J., dissenting from order of disbarment)].

This flows inevitably from the thesis of *In re Wilson,* 81 *N.J.* 451 (1979), that "the principal reason for discipline is to preserve the confidence of the public in the integrity and trustworthiness of lawyers...." *Id.* at 456.

An Ethical Consideration in the Code of Professional Responsibility adopted by the American Bar Association states: "Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude." Model Code of Professional Responsibility *EC* 1–5 (1980).

There are few New Jersey decisions that involve disciplinary proceedings resulting from illegal sexual conduct. *In the Matter of Wesler,* 1 *N.J.* 573 (1949), involved the crime of carnal abuse and resulted in disbarment. In another case, where an attorney was convicted of acts of lewdness and carnal indecency, the Court said "[t]he offenses warrant striking respondent's name from the rolls but since he obviously is ill, the stigma of disbarment should not be visited upon him. Accordingly he is suspended from the practice of law until the court shall otherwise order upon satisfactory proof of his cure." *In re Fleckenstein,* 34 *N.J.* 20 (1961).

The Board was satisfied, as are we, that respondent's offense was aberrational and not the product of a diseased mind. We nonetheless regard it as serious and believe that the public and the profession will be best served by a period of suspension. Other jurisdictions have taken such a view. *Matter of Wood*, 265 *Ind.* 616, 358 *N.E.*2d 128 (1976) (sexual misconduct with clients, one year suspension); *Matter of Kimmel*, 322 *N.W.*2d 224 (Minn. 1982) (sexual misconduct with minor; limitation on practice during period of probation).

Respondent is suspended from the practice of law for three months and until further order of the Court. He is further required to reimburse the Administrative Office of the Courts for appropriate administrative costs, including the cost of producing transcripts.

So ordered.

*For suspension*—Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.

## ORDER

It is ORDERED that DENIS G. ADDONIZIO of BRICK be suspended from the practice of law for three months and until the further order of this Court, effective January 30, 1984; and it is further

ORDERED that DENIS G. ADDONIZIO reimburse the Administrative Office of the Courts for administrative costs, including the production of transcripts; and it is further

ORDERED that respondent be restrained and enjoined from practicing law during the period of his suspension and that he comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.