IN THE MATTER OF STEVEN ALLEN HERMAN, AN ATTORNEY-AT-LAW.

Argued June 23, 1987—Decided July 17, 1987.

*Richard J. Engelhardt,* Assistant Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Ronald Busch* argued the case for respondent (*Busch & Busch,* attorneys).

PER CURIAM.

This matter arises from a report of the Disciplinary Review Board (Board or DRB) recommending that respondent, Steven Allan Herman, be suspended from the practice of law for a minimum period of three years from the time of his temporary suspension. The matter came before the Board on a motion for final discipline filed by the Office of Attorney Ethics based upon respondent's guilty plea to a charge of sexual assault in violation of *N.J.S.A.* 2C:14–2b. Respondent does not challenge the DRB's finding that he engaged in conduct that adversely reflected on his fitness to practice law, contrary to *DR* 1–102(A)(3), and the only issue is the appropriate discipline to be imposed.

I

The DRB summarized the relevant facts as follows:

Several times between May 1, and July 31, 1984 respondent, 44, purposely touched the buttocks of a ten-year-old boy who was visiting respondent's son in

respondent's home. Respondent either touched the buttocks from the outside of the boy's clothing or would insert his hand inside the boy's pants.

Respondent was arrested on September 16, 1984. On March 1, 1985 he pleaded guilty to a Mercer County accusation which charged him with committing sexual assault, contrary to *N.J.S.A.* 2C:14–2b. This law provides that a person is guilty of sexual assault if he commits an act of sexual contact with a victim who is less than 13 years old and the actor is at least 4 years older than the victim. As part of the plea agreement, the State recommended dismissal of other complaints charging respondent with similar conduct with about five different boys. The State also agreed that no charges would be filed against respondent as a result of a then pending investigation involving one or two other boys.

Pursuant to *N.J.S.A.* 2C:47–1 respondent was referred to the Adult Diagnostic and Treatment Center for examination. The examination revealed that respondent's conduct qualified him to be sentenced under the purview of the State Sex Offender Act in that there had been a pattern of repetitive, compulsive behavior. Under this Act, a court could sentence a defendent to the Diagnostic Center for a program of specialized treatment for his mental condition. Respondent was sentenced on June 14, 1985. The court was informed respondent had been undergoing counseling since the time of the incident and it would continue. Although there is a presumption of imprisonment for conviction of a second degree crime, *N.J.S.A.* 2C:44–1d, the court placed respondent on three years probation with the condition that counseling be continued, and the counselor file a report with the probation department every 90 days. In addition, 60 hours of community service and a fine of $350 were imposed. There was no finding that the mitigating factors substantially outweighed the aggravating factors, *N.J.S.A.* 2C:44–1f(2).

At the time of the offense, respondent was associated with a law firm in East Brunswick, New Jersey. Within days of his arrest, he voluntarily terminated his relationship with that firm and ceased practicing law. On November 20, 1985, this Court formally suspended respondent from the practice of law pending the outcome of these proceedings. *In re Herman,* 101 *N.J.* 26 (1985).

With respect to the appropriate discipline, the DRB stated:

"The principal reason for discipline is to preserve the confidence of the public in the integrity and trustworthiness of lawyers in general." *Matter of Kushner,* 101 *N.J.* 397, 400 (1986); *In re Wilson,* 81 *N.J.* 451, 456 (1979). The interests of the public, the bar and the individual involved must be considered. *Kushner, supra,* [101 *N.J.*] at 400; *In re Infinito,* 94 *N.J.* 50, 57 (1983); *In re Mischlich,* 60 *N.J.* 590, 593 (1972).

"Disciplinary determinations are necessarily fact-sensitive." *Kushner, supra,* 101 *N.J.* at 400. Not only should consideration be given to the nature and severity of the crime and the relation of the crime to the practice of law, it

should also be given to factors which mitigate the damage an attorney's misconduct has caused. This would include the attorney's good reputation, his prior trustworthy professional conduct and his general good character. *Id.* at 400–401; *In re Infinito, supra,* 94 *N.J.* at 57.

Respondent, admitted to the bar in both New Jersey and New York, has no prior disciplinary history. His misconduct was not directly related to the practice of law. However, an attorney is

> ... obligated to adhere to the high standard required by a member of the bar even though his activities do not involve the practice of law. *In re Ryan,* 66 *N.J.* 147, 150 (1974); *In re Carlson,* 17 *N.J.* 338, 346 (1955); *In re Genser,* 15 *N.J.* 600, 606 (1954); [*In re Franklin,* 71 *N.J.* 425, 429 (1976)].

The misconduct involved here is serious. The legislature has designated this type of crime at the second highest level and has mandated that a person violating this law be incarcerated regardless of the person's background. See *N.J.S.A.* 2C:44–1d. Under the state's criminal code, the fundamental sentencing guideline is the punishment must fit the crime and not the criminal. See *State v. Hodge,* 95 *N.J.* 369, 376 (1984). However, the central concern in attorney ethics "is the fostering of public confidence in the bar, not the punishment of wrongdoing attorneys. *In re Hughes,* 90 *N.J.* 32, 36 (1982)." *Kushner, supra,* 101 *N.J.* at 400. In *In re Addonizio,* 95 *N.J.* 121 (1984) the Court noted that

> [a]n Ethical Consideration in the Code of Professional Responsibility adopted by the American Bar Association states: "Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude." Model Code of Professional Responsibility EC 1–5 (1980) [*Id.* at 124].

As a representative of a profession that advocates the law, an attorney must set an example that the law will be obeyed. An attorney is an attorney 24 hours a day, not eight hours, five days a week. See *State v. Postorino,* 53 *Wis.* 2d 412, 193 *N.W.*2d 1, 4 (1972).

The discipline to be imposed must accord with the seriousness of the misconduct in light of relevant circumstances. *In re Nigohosian,* 88 *N.J.* 308, 315 (1982). The Board finds in mitigation that respondent has no prior disciplinary history and he cooperated with law enforcement officials following his arrest. However, the Board concludes the aggravating factors substantially outweigh the mitigating factors. This was a serious crime of moral turpitude involving a child of tender years. The young victim required weeks of counseling, but a traumatic event such as this will long leave its scar on the victim. Childhood should be a time of trust and happiness, not one of abuse by an adult seeking sexual gratification. The Board unanimously recommends respondent be suspended from the practice of law for a minimum of three years, running from the time of his temporary suspension. Respondent also must continue with active counseling as directed by the criminal court. Prior to any restoration to the practice of law, the Board recommends respondent be psychiatrically

evaluated by an independent physician appointed by the Board to determine whether it is likely that this type of conduct could recur.

We share the views of the DRB that respondent's offense was serious. We note, however, that respondent has cooperated with law enforcement authorities and that he voluntarily suspended his practice of law on or about September 18, 1984, over a year before the date of his formal suspension.

 The primary purpose of discipline is not to punish the attorney, a consideration more appropriate to criminal law, *In re Addonizio*, 95 *N.J.* 121, 124–25 (1984), but "to preserve the confidence of the public in the integrity and trustworthiness of lawyers * * *," *In re Wilson*, 81 *N.J.* 451, 456 (1979). Although respondent's misconduct did not directly relate to the practice of law, the DRB was correct in concluding that it adversely reflected on respondent's fitness to practice law. Furthermore, a lawyer has an obligation to adhere to a high standard of conduct even though his activities are not related to the practice of law. *In re Franklin*, 71 *N.J.* 425, 429 (1976). In a similar case, *In re Addonizio, supra*, 95 *N.J.* 121, we concluded that the seriousness of the attorney's misconduct and the protection of the public required a three-month suspension of an attorney who pled guilty to the fourth-degree crime of sexual contact in violation of *N.J.S.A.* 2C–14–3(b). Here, respondent pled to a more serious offense, a second-degree crime. Nonetheless, respondent voluntarily suspended himself from the practice of law nearly three years ago and his conduct since his arrest suggests his awareness of his problem and his willingness to receive appropriate treatment.

██ On balance, we believe the appropriate discipline should be a three-year suspension retroactive to the time that respondent voluntarily suspended himself from the practice of law, September 18, 1984. As a condition to his readmission, respondent should continue with his psychiatric counseling until further order of this Court. Furthermore, his reinstatement as an attorney is subject to a report by a psychiatrist appointed by

the DRB indicating that respondent is able to resume the practice of law and that it is unlikely that he will engage again in the kind of conduct that gave rise to these proceedings.

Respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs, including the costs of transcripts.

So ordered.

WILENTZ, C.J., and CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN, JJ., join in this opinion.

## ORDER

The Disciplinary Review Board having recommended that STEVEN ALLAN HERMAN of East Brunswick, who was admitted to the bar of this State in 1978, be suspended from the practice of law for three years, and good cause appearing;

IT IS ORDERED that STEVEN ALLAN HERMAN is suspended from the practice of law for three years and until the further Order of the Court, retroactive to September 18, 1984, the date on which respondent voluntarily withdrew from the practice of the law; and it is further

ORDERED that as a condition of restoration and until the further Order of the Court, respondent shall continue to receive psychiatric counseling; and it is further

ORDERED that respondent's restoration shall also be conditioned upon the receipt of a report by a psychiatrist appointed by the Disciplinary Review Board indicating that respondent is able to resume the practice of law and that it is unlikely that he will engage again in the kind of conduct that gave rise to these proceedings; and it is further

ORDERED that respondent shall continue to comply with Regulation 23 governing suspended attorneys; and it is further

72

ORDERED that respondent shall reimburse the Ethics Financial Committee for appropriate administrative expenses incurred in the prosecution of this matter.

WITNESS, the Honorable Robert N. Wilentz, Chief Justice, at Trenton, this 17th day of July, 1987.