577 A.2d 139
IN THE MATTER OF "X," AN ATTORNEY AT LAW.

Argued May 21, 1990—Decided July 27, 1990.

*Richard J. Engelhardt*, Assistant Ethics Counsel, argued the cause on behalf of The Office of Attorney Ethics.

*Alfred F. Avignone* argued the cause for respondent (*Toto, Romano & Avignone*, attorneys).

PER CURIAM.

Occasionally a case arises with facts so egregious that although tragic, they cry out for disbarment. This is such a case. Respondent was admitted to the New Jersey bar in 1967. On July 20, 1988, he was charged in a twenty-eight-count indictment with five counts of aggravated sexual assault in violation of *N.J.S.A.* 2C:14–2, eight counts of sexual assault in violation of *N.J.S.A.* 2C:14–2, five counts of attempted sexual assault in violation of *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:14–2, seven counts of criminal sexual contact in violation of *N.J.S.A.* 2C:14–2 and 14–3, and three counts of endangering the welfare of children in violation of *N.J.S.A.* 2C:24–4. The charges related to numerous incidents occurring between 1980 and 1988, in which respondent engaged in various sexual acts with his three daughters.

## I

Pursuant to a plea agreement, respondent pled guilty on September 28, 1988, to three counts of second-degree sexual assault. At the plea hearing, he admitted that he had sexually assaulted his three daughters, one of whom was under the age of thirteen years, and two of whom were between the ages of sixteen and eighteen years at the time of the assaults. He was sentenced on February 22, 1989, to three concurrent terms of five years at the Adult Diagnostic and Treatment Center at Avenel.

Respondent, who has been temporarily suspended from the practice of law since October 19, 1988, came before the Disciplinary Review Board (DRB) on a motion of the Office of Attorney Ethics for final discipline based on the criminal conviction. *See R.* 1:20–6(b)(2)(i). The DRB concluded that respondent had engaged in conduct that adversely reflected on his fitness to practice law, in violation of *Disciplinary Rule* 1–102(A)(6) and *Rule of Professional Conduct* 8.4(b). In its report, the DRB concluded that

respondent's atrocious acts justify his disbarment. More despicable behavior is difficult to fathom, especially in light of the vulnerability of the victims and of their close relationship to the offender. For a period of eight years, respondent sexually abused his three young daughters for the purpose of obtaining sexual gratification because, as put by the prosecutor and as found by the sentencing judge, respondent found his wife unattractive and prostitutes were too expensive. And he did so knowingly. The Board scoured the record for the existence of circumstances that might indicate that respondent's cognitive senses were substantially impaired. The Board found none.

The shocking details described in the above factual recitation leave no doubt that respondent's behavior was so shameful, so immoral, so vile as to evidence an absolute lack of good moral character. The Board, therefore, unanimously recommends that respondent be disbarred. [Citation omitted.]

## II

No useful purpose would be served by detailing the degrading acts that respondent performed on his daughters or the devastating effect of those acts on them. Consequently, we

turn to the legal effect of respondent's guilty plea to three counts of second-degree sexual assault. As described by the DRB:

A criminal conviction is conclusive evidence of respondent's guilt in disciplinary proceedings. *Matter of Goldberg*, 105 *N.J.* 278, 280 [520 *A.*2d 1147] (1987); *Matter of Tuso*, 104 *N.J.* 6 [59], 61 [514 *A.*2d 1311] (1981); *In re Rosen*, 88 *N.J.* 1, 3 [438 *A.*2d 316] (1981); *R.* 1:20–6(b)(1). Therefore, no independent examination of the underlying facts is necessary to ascertain guilt. *In re Bricker*, 90 *N.J.* 6, 10 [446 *A.*2d 1195] (1982). The only issue to be determined is the quantum of discipline to be imposed. *Matter of Goldberg, supra,* 105 *N.J.* at 280 [520 *A.*2d 1147]; *Matter of Kaufman*, 104 *N.J.* 509, 510 [518 *A.*2d 185] (1986); *Matter of Kushner*, 101 *N.J.* 397, 400 [502 *A.*2d 32] (1986); *In re Addonizio*, 95 *N.J.* 121, 123–124 [469 *A.*2d 492] (1984); *In re Infinito*, 94 *N.J.* 50, 56 [462 *A.*2d 160] (1983); *In re Rosen, supra,* 88 *N.J.* at 3 [438 *A.*2d 316]; *In re Marabelli* [Mirabelli] 79 *N.J.* 597, 602 [401 *A.*2d 1090] (1979); *In re Mischlich*, 60 *N.J.* 590, 593 [292 *A.*2d 23] (1977 [1972] ). Respondent's guilty plea to sexual assault establishes that he engaged in conduct that adversely reflects on his fitness to practice law, in violation of *DR* 1–102(A)(6) and *RPC* 8.4(b).

An attorney is obligated to adhere to the high standard of conduct required of every member of the bar, even when the activities do not directly involve the practice of law. *Matter of Rutledge*, 101 *N.J.* 493, 498 [502 *A.*2d 569] (1986); *Matter of Huber*, 101 *N.J.* 1, 4 [499 *A.*2d 220] (1986 [1985] ); *In re Suchanoff,* 93 *N.J.* 226, 230 [460 *A.*2d 642] (1983); *In re Franklin*, 71 *N.J.* 425, 429 [365 *A.*2d 1361] (1976); *In re Carlsen*, 17 *N.J.* 338, 347 [111 *A.*2d 393] (1955); *In re Genser*, 15 *N.J.* 600, 606 [105 *A.*2d 829] (1956). Good moral character is a basic condition for membership in the bar. *In re Gavel*, 22 *N.J.* 248, 266 [125 *A.*2d 696] (1956). Any misbehavior, private or professional, that reveals lack of good character and integrity essential for an attorney constitutes a basis for discipline. That respondent's misconduct did not arise from a lawyer-client relationship or that respondent did not commit the offense in his professional capacity is, therefore, immaterial. *In re Suchanoff, supra,* 93 *N.J.* at 226 [460 *A.*2d 642]; *In re Franklin, supra,* 71 *N.J.* at 429 [365 *A.*2d 1361].

Respect for the law is the keystone of democracy. An attorney by tradition is an appropriate advocate of this truism and it behooves him to act accordingly and exercise the utmost restraint under all circumstances. [*In re Howell*, 10 *N.J.* 139, 140, 89 *A.*2d 652 (1952).]

Respondent has pleaded guilty to second degree sexual assault, an offense that brings reproach upon the entire profession. A person who does not uphold that which he is obligated to uphold imperils not only himself, but also the honor and integrity of his profession. He undermines the public trust and confidence in his profession as a whole. *In re Wilson*, 81 *N.J.* 451, 456 [409 *A.*2d 1153] (1979). "To lawyers especially, respect for the law should be more than a platitude." Model Code of Professional Responsibility, EC 1–5 (1980) (quoted in *In re Addonizio, supra,* 95 *N.J.* at 124 [462 *A.*2d 160] ).

■ When determining the appropriate measure of discipline based on the conviction of a crime, we consider several factors, including the nature and severity of the crime; whether the crime was related to the practice of law; the existence of mitigating circumstances; and the respondent's prior reputation and professional conduct. *In re Infinito,* 94 *N.J.* 50, 57, 462 *A.*2d 160 (1983).

■ Certain factors weigh in respondent's favor. His offenses do not relate to the practice of law, and his record of prior professional conduct is unblemished. Indeed, he has submitted to us numerous letters that he had previously submitted to the sentencing court. Those letters, written by attorneys, clients, friends, and relatives, as well as community and religious leaders, attest to his competency as an attorney and to his participation in civic and religious activities.

Several other factors, however, weigh heavily against respondent. The sentencing court aptly summarized the extent to which respondent's behavior fell below the standard of good moral character expected of attorneys:

[Respondent] had to know that [his] daughters were especially vulnerable and not capable of offering any real resistance to [him] as their father.

It further appears that notwithstanding all the circumstances [respondent] voluntarily continued to impose the unlawful demeaning acts of unprotracted [sic] sexual assaults upon [his] daughters.

It further appears quite clearly that [respondent was] content to continue to pursue the type of conduct into the future and in all probability would have continued to do so had it not been that [his] daughters could take no more and decided to seek help.

* * * [T]he circumstances of the crime for which [respondent] stand[s] convicted in this case were neither unusual nor unanticipated, but rather, occurred over a rather substantial period of time during which the victims did put up resistance which [he] completely ignored.

Respondent urges that discipline short of disbarment is appropriate in this case. He places particular reliance on our decision in *In re Herman,* 108 *N.J.* 66, 527 *A.*2d 868 (1987). In *Herman,* we suspended respondent for a period of three years for having committed second-degree sexual assault. *Id.* at 70, 527 *A.*2d 868.

The attorney's misconduct in *Herman* is distinguishable from that of respondent. Respondent committed more serious transgressions over a longer period of time. By comparison, Herman was indicted for and convicted of placing his hand on the buttocks of a ten-year-old boy on several occasions within a period of three months. *Id.* at 67–68, 527 *A.*2d 868. Respondent, however, persisted in a variety of sexual acts with his daughters, notwithstanding their protestations, over a course of years. We have no difficulty in deciding that this case calls for sterner measures than were appropriate in *Herman.*

Recently, we disbarred an attorney who pled guilty to second-degree murder. *See In re McAlesher,* 93 *N.J.* 486, 461 *A.*2d 1122 (1983). Thus, we break no new ground in disbarring an attorney based on a conviction for a second-degree offense unrelated to the practice of law. Similarly, we have previously disbarred an attorney based on a conviction of a sex offense. *See In re Wesler,* 1 *N.J.* 573, 64 *A.*2d 880 (1949).

As the DRB found, "respondent's atrocious acts justify his disbarment. * * * A less severe discipline would undermine the gravity of the ethics offenses, the seriousness of the crimes, and the confidence reposed by the public on the members of the legal profession and on the judicial system." We agree.

Respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs, including the costs of transcripts.

So ordered.

## ORDER

This matter having been duly considered by the Court, and the Court having determined that the record in this disciplinary proceeding should be sealed, and good cause appearing;

It is ORDERED that "X", an attorney at law of the State of New Jersey, is hereby disbarred and that his name is stricken

from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that respondent is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent continue to comply with Regulation 23 of the Office of Attorney Ethics; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for all appropriate administrative costs, including the production of transcripts.

*For disbarment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.