IN THE MATTER OF ARTHUR J. MAURELLO, AN ATTORNEY AT LAW.

June 12, 1986.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that ARTHUR J. MAURELLO, of HILLSDALE, who was admitted to the Bar of this State in 1976, be publicly reprimanded for conduction in violation of *DR* 1–102(A)(4), (5) and (6); *DR* 6–101(A)(1), and (2), *DR* 7–102(A)(1), and *DR* 9–102(B), and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and respondent is publicly reprimanded; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file

of said ARTHUR J. MAURELLO as an attorney at law of the State of New Jersey; and it is further

ORDERED that ARTHUR J. MAURELLO reimburse the Ethics Financial Committee for appropriate administrative costs.

## Decision and Recommendation of the Disciplinary Review Board

This matter is before the Board based upon three presentments and a report recommending a private reprimand filed by the District II–B (Bergen County, South) Ethics Committee.

The Board makes the following findings of fact;

### 1. PATRICIA DONOVAN MATTER.

Respondent was retained by Mrs. Patricia Donovan in May 1980. He was to prepare an accounting for an estate so she could obtain an executrix's commission. After receiving $300, Respondent informed Mrs. Donovan by letter that he expected to complete this matter within a short time. During the next thirteen months, Mrs. Donovan was not successful in contacting Respondent either by telephone or office visits. Ultimately, Mrs. Donovan hand carried a letter dated September 23, 1982 to Respondent's office, personally handing it to him. Respondent vaguely recognized her but did not open the letter at that time because he was preoccupied with other matters. After he reviewed the letter, he pulled the file and learned that it had inadvertently been marked closed. He could not explain how it was so marked.

By letter dated October 1, 1982 Respondent informed his malpractice insurance carrier that he could not remember the details of this case but he felt that he failed to follow through with it. Respondent advised Mrs. Donovan by letter dated October 8, 1982 that his formal claim upon the estate had been rejected and that he failed to follow through within the 90-day period by filing a claim with the Superior Court. Respondent

maintained that the file had been marked closed during that period apparently by a former secretary. Mrs. Donovan was advised that her claim against the estate was then time barred from recovery but was urged to contact Respondent's malpractice carrier. Respondent later returned the $300 retainer to Mrs. Donovan and repeatedly urged her to file a claim with the insurance carrier to collect the $1,600 due her before the statute of limitations expired. As of May 21, 1984, the date of the Ethics Committee hearing, Mrs. Donovan had not submitted the release to the insurance carrier to obtain this money. The Ethics Committee concluded that Respondent's failure was not intentional but negligent. It held that the "closing of a file and the failure to communicate with client for a period of over two years cannot be condoned or excused based on inadvertence." The Committee concluded that this complaint was one of several which exhibited a pattern of neglect, DR 6–101(A)(2).

2. GONZALEZ v. RONAY MATTER.

Respondent was retained to represent defendant Ronay in a personal injury action with respect to punitive damages only. An insurance carrier attorney represented defendant with respect to compensatory damages. The legal action was filed in April 1982. The plaintiff was represented by an attorney who was a member of both the New Jersey and New York bars. His New Jersey office was in his residence. In September 1982 Respondent was served by plaintiff's attorney with interrogatories. Shortly before the time to answer expired, Respondent requested of plaintiff's attorney an extension but the attorney refused. After about six telephone calls and two letters to Respondent seeking answers to the interrogatories were ignored, the plaintiff's attorney in January 1983 filed an *ex parte* application and obtained an order dismissing the answer by Respondent's client.

Respondent filed a motion to vacate the dismissal order. He telephoned the plaintiff's attorney on March 4, 1983 at that attorney's New York office, requesting his consent to the

motion. Plaintiff's attorney declined consent and expressed concern over his client's emotional and family problems. According to plaintiff's attorney Respondent threatened him by stating that if he did not consent Respondent would report him for not having a bona fide office in New Jersey and for violating the zoning ordinance by having an office in his home. Respondent contended that he had tried to reach plaintiff's attorney on several occasions by calling his New Jersey office but only spoke with a housekeeper whose command of the English language was limited. Respondent acknowledged he telephoned his adversary's New York office on March 4, 1983 but denied making any threats. Respondent conceded that he told plaintiff's attorney that the attorney was being petty and that if he, Respondent, also wanted to be petty he would not overlook the court rule pertaining to a bona fide office. Respondent maintained that he said he would not make a big deal of this and suggested that the attorney should do the same regarding the motion. Respondent denied making any statement about the zoning ordinance. Respondent also denied any responsibility concerning an anonymous ethics charge made against plaintiff's attorney. Respondent's motion for reinstatement was granted after a contested hearing on March 11, 1983. The civil lawsuit was later settled with no payment for punitive damages assessed against Respondent's client.

The Ethics Committee found that the words stated by Respondent in the March 4, telephone conversation were substantially undisputed, ruling that it could not by clear and convincing evidence find that Respondent intended to engage in illegal conduct. The Committee, however, found that the use of those words by Respondent was intended to influence plaintiff's attorney in his determination whether to withdraw his opposition to the pending motion. The Committee found that Respondent's conduct constituted actions which Respondent believed would harass or maliciously injure plaintiff's attorney, contrary to DR 7–102(A)(1), and constituted conduct that adversely reflected on Respondent's fitness to practice law, contrary to DR

1–102(A)(6). The Committee concluded that Respondent's inaction was another instance of a pattern of neglect, contrary to *DR* 6–101(A)(2). In particular, the Committee noted Respondent's failure to provide timely answers to interrogatories, failure to respond to his adversary's telephone calls and failure to respond to his adversary's charge of blackmail in connection with the bona fide office statement.

### 3. WANDA VALENTI MATTER.

In October 1980 Respondent was retained by Wanda Valenti to commence a paternity action. Respondent filed the complaint on on February 11, 1981 but was not able to serve defendant in the state. Respondent filed with the court on May 14, 1981 his Certification of Inquiry stating that he located defendant in New York City but that defendant was retired and in poor health. Respondent took no action from mid May until mid August 1981 to serve defendant by mail. At the Ethics Committee hearing, Respondent conceded that he did not follow through with what his client expected him to do.

The presenter produced no witnesses at the Ethics Commitee hearing and compelled Respondent, over objection, to testify as to the facts, citing *In re Gavel*, 22 *N.J.* 248 (1956) as support for this position. The hearing panel concluded that Respondent's failure to properly follow up on this matter was neglectful and could have severely prejudiced his client's rights if the defendant had disappeared or died. The panel ruled that this failure coupled with the other incidents, exhibited a pattern of neglect *DR* 6–101(A)(2).

### 4. SANDRA D. KING MATTER.

Respondent was retained in March 1981 to represent Sandra D. King in a divorce action against her husband and subsequently post judgment proceedings. The judgment of divorce was obtained in September 1981. Her husband failed to comply with the terms of the divorce concerning payments of money

due Mrs. King. Respondent was required to file a post judgment motion for relief seeking a garnishment of his salary. Since Mrs. King's former husband was a career military man, Respondent had difficulty learning of his new duty station. He eventually learned that the former husband was transferred to Germany. However, Respondent conceded that he had not kept Mrs. King advised of his efforts in locating her former husband.

Mrs. King, having moved to Florida, did not testify at the Ethics Committee hearing. Respondent was again compelled by the Committee to testify. The Committee found Respondent undertook reasonable efforts to locate the former husband but did not keep his client informed of his efforts which caused her to file an ethics complaint against him. The Committee concluded that this failure by Respondent was among those incidents which exhibited a pattern of neglect, DR 6–101(A)(2).

## 5. MARION REYNOLDS MATTER.

In a 1979 primary election, Respondent was one of three Republican candidates for two municipal council vacancies. Respondent lost that election, receiving one vote less than the second highest vote getter. Respondent's wife was a candidate for the Republican County Committee. She lost by three votes to Mrs. Reynolds.

On July 9, 1979 Respondent met with Mrs. Reynolds and another person to discuss the primary election results. Respondent explained to Mrs. Reynolds that he had filed a law suit challenging the results in both his and his wife's contests in which she was named as a defendant. He told her he knew that her residence in Hillside was extremely suspect, casting doubt on her elibibility to vote in that municipality. He did not wish to discuss this matter with her matrimonial attorney who was also the borough attorney. Respondent advised Mrs. Reynolds that he made her a party defendant both to satisfy the legal requirements of his wife's primary challenge and

indirectly to eliminate the borough attorney from participating in the matter. Respondent promised Mrs. Reynolds that he would withdraw the challenge to her County Committee position if she did not appear in court to defend his challenge to her Hillside residence. Invalidating Mrs. Reynolds' vote would cause a run-off election between Respondent and the second highest vote getter. At the Ethics Committee hearing, Respondent maintained that this was political activity and no one was harmed. Therefore his conduct was not unethical.

The Ethics Committee found that Respondent gave advice to Mrs. Reynolds knowing that she was represented by counsel, without that counsel's consent. The advice Respondent gave Mrs. Reynolds was contrary to her interests. Respondent placed himself in a position of direct conflict between his interests, his client-wife's interests and Mrs. Reynolds interests. The Committee concluded that Respondent's conduct violated *DR* 1–102(A)(5) and (6). His advice to Mrs. Reynolds not to appear in court would have hindered the court's fact finding process by concealing a crucial witness. The Committee further concluded that Respondent's conduct exceeded the bounds of trial strategy because he attempted to manipulate a witness.

### 6. MARIA POSKANZER MATTER.

In June 1982 Respondent was retained by Maria Poskanzer, a principal shareholder in a corporation known as Positive Directions Unlimited, Inc., to institute corporate bankruptcy proceedings. At this time, there was pending before the state Superior Court a shareholders' dispute concerning the percentage of ownership of each shareholder in the corporation. When Respondent was retained, he was given copies of the Superior Court pleadings. Another attorney represented the corporation in the shareholders' dispute. While no retainer agreement was entered into between Ms. Poskanzer and Respondent, Respondent received $1,500 as a fee.

Respondent conceded that he erred in executing a consent judgment in the bankruptcy proceedings entered on November 19, 1982 wherein he stated that he represented the corporation and two shareholders individually in their corporate capacity. The consent order further indicated that an alleged minority shareholder was a majority shareholder. The consent order was later set aside. Respondent claimed that his error in signing on behalf of the individual shareholders was purely inadvertence because he had not read carefully the pleadings prepared by his adversary.

The Ethics Committee found that Respondent violated *DR* 6–101(A)(1) and (2) in that he handled the bankruptcy proceedings in a grossly negligent manner. The Committee further found that Respondent exhibited a pattern of negligence in his handling of legal matters generally.

The second count of that complaint charged that Respondent represented Ms. Poskanzer in May 1982 to file an answer in a civil suit commenced in district court by Modern Arts Packaging, Inc., a supplier of her company. Respondent failed to file an answer which resulted in a default judgment being entered against the company and Ms. Poskanzer. When Ms. Poskanzer learned of this, she called another attorney who filed a motion to set aside the default judgment. Ms Poskanzer maintained that when she asked Respondent for an affidavit to support the application, Respondent asked her to sign a waiver releasing him of liability. Respondent, however, maintained that he had not asked Ms. Poskanzer to sign a release. He further maintained that his failure to file an answer was because he was preoccupied with the bankruptcy proceedings which he handled for the corporation.

The Ethics Committee concluded that Respondent's conduct violated *DR* 6–101(A)(1) and (2) in that he handled the legal action in a grossly negligent manner. The Committee concluded that the allegation that Respondent knowingly failed to carry out a contract of employment could not be sustained. It

further found the evidence insufficient to sustain the allegation that Respondent attempted to exonerate himself or limit his liability by having his client sign a release.

### 7. ANTHONY J. MARICONDA MATTER.

Respondent received from the trust account of Anthony J. Mariconda a check dated October 20, 1983 for $15. The check was for prior services performed for clients in a real estate closing. At the closing all parties were advised what this $15 represented and there were no objections to the payment. Respondent directly endorsed the check over to a third party, Midlantic Bank, without first depositing same into his attorney business account. Respondent did not dispute these facts but claimed his action was unintentional.

The Committee concluded that Respondent had not deposited this check as required by R. 1:21–6(a)(2) into his office's business account. It concluded that Respondent's conduct violated DR 9–102(B) and the court rule by failing to properly deposit that check.

### 8. MARTHA PEAK MATTER.

Ms. Martha Peak is Respondent's former wife. They were divorced in June 1981. In August 1983 she received notice that there was a delinquency on her credit card. When she contacted the bank, she learned that the account had been regularly used for some time and that statements were mailed to Respondent's address, which has been his law office and residence since 1978. When she attempted to discuss this matter with Respondent, he refused to speak to her on the telephone. The bank informed her that it had placed a stop on the account so that no one would be able to charge any merchandise on it. Ms. Peak then wrote a letter to the District Ethics Committee and urged it to persuade Respondent to stop using her credit card and to pay the delinquent amount. Respondent acknowledged that he did use this account but did not intentionally try

to hurt the credit of his former wife, adding that the total charges were $1,096 for the period of time in question. Respondent also maintained that he paid the account in full.

The Committee concluded that Respondent never had his former wife's permission or authority to use the credit card, nor had he advised her that he had her credit card in his possession. The Committee concluded that Respondent's conduct violated *DR* 1–102(A)(4) and (6) in that he knowingly used the credit of another and in so doing was deceitful in his conduct as to the holder of the card and the issuer of the card. This conduct adversely reflected on Respondent's fitness to practice law.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Ethics Committee in finding Respondent guilty of unethical conduct are fully supported by clear and convincing evidence.

The record clearly establishes a trail of neglect by Respondent. He agreed to perform legal services but failed to follow through. In the Donovan matter Respondent completely abandoned his client which resulted in her being barred from pursuing her claim in court. He did, however, seek to cure his misconduct by urging her to contact his malpractice carrier. Nevertheless, the frustration of this client at Respondent's lack of professionalism is evident from her letter to him which said in part

My ears have fallen off, my feet are bloody stumps all because I've not had *a* telephone call or *a* piece of mail from you since I gave you $300 nearly fifteen months ago.

In Ronay, Respondent failed to file the necessary legal papers and sought to intimidate his adversary into not contesting a motion he filed. He was also negligent in the Poskanzer matters. In the Reynolds matter, Respondent attempted to manipulate a witness in an election contest; in the Mariconda matter, Respondent did not deposit a check as required by *R.* 1:21–6(A)(2) into his office business account, and in the Peak

matter, Respondent knowingly used a credit card of another without that person's permission. The Board concludes that Respondent violated *DR* 1–102(A)(4), (5) and (6); *DR* 6–101(A)(1) and (2); *DR* 7–102(A)(1), and *DR* 9–102(B).

The Board agrees with the Ethics Committee that Respondent's misconduct was at least in part attributable to a high volume litigation practice and his inexperience as an attorney, coupled with inadequate staff and office controls. Nevertheless, Respondent's conduct adversely reflected upon all members of the profession. Lawyers ...

everywhere are ... on public trial ... The procrastination of one of us results in the condemnation of all and, in this context, we must stand responsible for each other as we discharge our obligation to our clients, the courts, and the public at large [*Mendicino v Magagna,* 572 *P.2d* 21, 23–24 (Wyo.Sup.Ct.1977)].

Respondent's conduct in directly speaking to a litigant who was in an adversarial position to him was patently selfserving. His gratuitous advice, if acted upon, was potentially detrimental to Mrs. Reynolds position and a disservice to the court. An attorney is expected to maintain the integrity of his profession in all his transactions. *Cf. In re Franklin,* 71 *N.J.* 425, 429 (1976).

In determining the proper discipline to recommend, the Board is mindful that the purpose of discipline is protection of the public and not punishment of the attorney. Mitigating factors are relevant. *In re Hughes,* 90 *N.J.* 32, 36 (1982). "The severity of discipline to be imposed must comport with the seriousness of the ethical infractions in light of all the relevant circumstances." *In re Nigohosian,* 88 *N.J,* 308, 315 (1982).

Respondent readily acknowledged that his conduct during the period encompassed by these complaints was not proper and exhibited poor judgment. Respondent, admitted to the practice of law in 1976, became a solo practioner in 1978. With limited experience and inadequate staff, Respondent engaged in a high-volume litigation practice for which he apparently was not ready. At the Board hearing, Respondent stated that he has gained in experience, his office is more efficiently operated and

he now has adequate staff enabling him to better monitor his case deadlines. Respondent also stated that

my experience before this Committee has had a sobering effect in terms of realization that I have to be ever careful to meet my responsibilities. A pattern of neglect was noted. It's undeniable as to the period in time and I took steps to deal with it [Board hearing transcript of June 19, 1985 at 37-12 to 21].

A five-member majority of the Board recommends that Respondent be publicly reprimanded based on the totality of his conduct. One member recommends a three month suspension. One member recommends a one year suspension. Two members did not participate.

The Board further recommends that Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.