COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

**Robert James GREEN, Respondent.**

No. 62355.

Supreme Court of Iowa.

Nov. 14, 1979.

Roger J. Kuhle, Des Moines, for complainant.

William L. Kutmus, Des Moines, for respondent.

HARRIS, Justice.

We must decide, on a de novo review of the report of our grievance commission, the appropriate action in this attorney disciplinary proceeding. We are convinced the license must be revoked.

The respondent, Robert James Green, does not dispute the commission's carefully considered report. Respondent was 28 years old at the time of the hearing. Following his admission to the bar in August 1977 he never engaged in the active practice of law. At the time of the occurrences which gave rise to this proceeding he was living in a small Iowa town, working as a self-employed painter.

The respondent became acquainted with David Ogden II sometime in 1973. Thereafter Ogden was convicted in the federal courts of importing marijuana and served time in a federal penitentiary. Ogden then returned to his home in Clinton, Iowa, where he, his wife, and his mother were all engaged in the real estate business. Ogden was a handyman who bought older houses, improved them, and sold them for a profit. Notwithstanding Ogden's brush with the federal authorities the respondent remained on friendly terms with him.

On October 9, 1977, Ogden asked respondent to help him paint a house in Clinton which he agreed to do. He worked on the house on October 10 and 11, spending the evening of October 10 at the Ogden home. It was his intention to stay in Clinton until the work was done.

On October 11 Ogden told the respondent he was going to Iowa City for a karate lesson. The respondent asked to go along with the idea of having a couple of drinks, picking up his wife in West Branch, and returning to Clinton with her. He denies any conversation with Ogden about drugs before leaving Clinton at 6:00 p. m. in Ogden's car. En route to Iowa City, Ogden told respondent of his intention to deliver cocaine to the home of Karen Jensen in Solon, Iowa. The respondent knew Karen Jensen, a former medical student. According to respondent's testimony he told Ogden it was a bad situation for him and asked to

be dropped off at a bar as he preferred to stay out of it. He testified Ogden was unwilling to drop him off and they continued on their trip, arriving in Solon about 45 minutes later.

Ogden drove around the block where Karen Jensen lived and observed a car in the alley south of her home. Ogden told the respondent to go down the alley and see who was in the car. Respondent did so, and, seeing two men in the car, returned to report that fact to Ogden. Ogden and the respondent then drove downtown where they went into a bar in order to phone Karen Jensen. The respondent did not actually take part in this call but had drinks while the call was made.

Ogden and the respondent then returned to the car and started back to the Jensen home. Along the way Ogden asked respondent to call Karen Jensen again and he did so. Respondent understood that the purpose of this call was to inquire what was going on in the car which was parked in the alley. After placing the call the respondent did not continue the conversation but gave the phone to Ogden who talked with her. Respondent and Ogden then drove to an apartment complex northwest of the Jensen home and parked the car.

Ogden carried a large grocery sack which respondent observed and understood to contain cocaine. They went into the Jensen home where the respondent sat in the kitchen and had a beer. While he did so Karen Jensen and Ogden went into the bathroom. Respondent testified of his belief Ogden was dropping off cocaine at this time although he did not actually see what was taking place.

In about ten or 15 minutes respondent and Ogden left the house together, Ogden carrying a ziplock plastic bag containing cocaine. As they went down the back steps of the house Ogden gave respondent the plastic bag and told him to give it to Karen. Ogden then ran off toward his car. Respondent testified that he was bewildered, frightened, and dumbfounded at this point. He said Karen Jensen came out and asked where Ogden was and he reported that Ogden had run off and given him the bag to give her. Respondent then handed the bag to her and she went back into the house.

Two narcotics agents were in the car which had been parked in the alley. Three were in the Jensen home. Several more were in a camper parked on the street in front of the Jensen house. When respondent was left alone on the back steps the agents surprised him and arrested him.

The respondent was originally charged with the felony of delivery of a schedule II controlled substance, in violation of section 204.401(1), The Code. As the result of a plea bargain he entered a guilty plea to the reduced charge of an accommodation offense, a serious misdemeanor, under section 204.410. He was sentenced to one year imprisonment in the county jail, 11 months of which were suspended. After serving 30 days he was placed on probation. The respondent denies he had any pecuniary interest in the delivery of cocaine and characterized himself as a "dupe" in the transaction. He freely admitted he could blame no one but himself for his "stupidity" and claimed to have been scared and intimidated by Ogden. He concedes, however, he was under no duress or threat of physical harm.

The commission found, and we agree, that Green entered into the transaction from a free desire to identify himself with the incident. He made no effort to escape involvement although he had ample opportunity to do so. His conduct plainly violated DR 1–102(A)(1), (3), (4), (5), and (6) together with EC 1–1, EC 1–5, and EC 9–6, Iowa Code of Professional Responsibility for Lawyers.

In *Committee of Pro. Ethics and Conduct v. Hanson*, 244 N.W.2d 822 (Iowa 1976), we revoked the license of a lawyer in large part for his possession of marijuana, and the purchase, possession, and intended accommodation distribution of what he thought were amphetamines. We find nothing in these facts which justifies anything less.

LICENSE REVOKED.

All Justices concur except McCORMICK, J., who takes no part.