IN THE MATTER OF GERALD M. GOLDBERG, AN
ATTORNEY AT LAW.

Argued October 21, 1986—Decided February 20, 1987.

*Robyn M. Hill,* Deputy Ethics Counsel, argued the cause for complainant Office of Attorney Ethics.

*Thomas R. Curtin,* argued the cause for respondent (*Curtin, Hubner & McKeon,* attorneys).

PER CURIAM.

This attorney disciplinary matter is before the Court on a Decision and Recommendation of the Disciplinary Review Board (DRB or Board). The respondent, Gerald M. Goldberg, was indicted in December 1984 by a Federal Grand Jury. The indictment charged respondent and thirteen others with felony

violations of Subchapters I and II of the Comprehensive Drug Abuse Prevention and Control Act of 1970. Pursuant to a plea agreement, on April 29, 1985, respondent entered a guilty plea to a one-count Superseding Information, which charged him with conspiracy to distribute, and to possess with intent to distribute, a Schedule II controlled substance, phenylacetone,[1] contrary to 21 *U.S.C.A.* § 846. This offense is a federal felony, which carries a maximum penalty of five years imprisonment and/or a $15,000 fine.

On June 20, 1985, respondent was sentenced in the United States District Court for the District of New Jersey. He received a suspended sentence, was placed on three years probation and fined $5,000. As a special condition of probation, respondent was ordered to perform fifteen hours of community service per week during the first two years of his probation.

As a result of his criminal conviction respondent was temporarily suspended from the practice of law by this Court on September 5, 1985. This action was taken pursuant to *Rule* 1:20–6(a)(1), providing for the automatic temporary suspension of an attorney convicted of a serious crime, which includes "any felony of the United States...." *R.* 1:20–6(a)(2).

The DRB concluded that respondent's criminal conviction demonstrates that he has "engaged in illegal conduct that adversely reflects on his fitness to practice law" in violation of Disciplinary Rule 1–102(A)(3) and Rules of Professional Conduct 8.4(b), and further that he knowingly "engaged in conduct involving dishonesty, fraud, deceit or misrepresentation" in violation of Disciplinary Rule 1–102(A)(4) and Rules of Professional Conduct 8.4(c), and that he counselled and assisted his client in conduct that he knew to be illegal, criminal and fraudulent in violation of Disciplinary Rule 7–102(A)(7) and

[1]Phenylacetone, or P–2P, is the main ingredient used in the manufacture of methamphetamine, also known as "speed."

Rules of Professional Conduct 1.2(d). The Board unanimously recommended that respondent be disbarred.

I.

In disciplinary proceedings against an attorney, a criminal conviction is conclusive evidence of respondent's guilt. *R.* 1:20–6(b)(1); *Matter of Coruzzi*, 98 *N.J.* 77 (1984). Once an attorney has been convicted of a crime, the sole question remaining is the extent of discipline to be imposed. *R.* 1:20–6(b)(2)(ii); *Matter of Infinito*, 94 *N.J.* 50, 56 (1983).

Because a judgment of conviction is conclusive evidence of respondent's guilt, there is no need to make an independent examination of the underlying facts to ascertain guilt. *Matter of Bricker*, 90 *N.J.* 6, 10 (1982). The underlying facts, however, may be relevant to the nature and extent of discipline to be imposed. *In re Rosen*, 88 *N.J.* 1 (1981).

We have independently examined the record and are satisfied that the DRB's determination of the underlying facts are supported by clear and convincing evidence. These are:

After respondent's law partnership ended in the fall of 1983, he began a solo practice. He unsuccessfully attempted to expand in the areas of business investments. During this time, his family financial pressures increased, in particular as a result of his daughter's serious and degenerative kidney disease. In 1984 a client introduced respondent to a friend, Stephen Michael Fleck, also known as Michael Bennett, who was interested in investing money in real estate and other businesses. Respondent claims he "foolishly closed his eyes" to the fact that Fleck was using an álias and that the substantial amount of cash Fleck had to invest was linked to drugs. Respondent and 13 others were later indicted by a federal grand jury in connection with violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970.

On April 30, 1985 respondent pleaded guilty to a superseding information which charged that between summer and October 11, 1984 he and others knowingly and intentionally conspired to distribute and possess with intent to distribute quantities of phenylacetone, a Schedule II controlled substance. The information further charged that a part of the conspiracy was that respondent would obtain false identification papers for Fleck, that Fleck would attempt to set up a trust arrangement to shield the proceeds of his narcotics transactions from detection and that respondent would travel to Switzerland to facilitate this arrangement. At the plea hearing, respondent acknowledged that he knowingly and intentionally joined and participated in the conspiracy.

When respondent was sentenced on June 20, 1985, the federal district court judge noted that this had been a three-year conspiracy during which defendants purchased nine tons of P2P, enough to make $200,000,000 worth of "speed" and that the conspiracy had profited at least three and a half million dollars at that point.

Our review of the record discloses that early in 1984, respondent became involved with one Fleck, who was the architect of a narcotics conspiracy. Respondent played a significant role in the criminal conspiracy. He counselled Fleck on narcotics negotiations with other co-defendants and was privy to information regarding Fleck's continuing attempts to obtain cocaine. Further, respondent took steps to invest and shield the proceeds of Fleck's narcotics transactions from detection. Respondent actually loaned Fleck his own driver's license to be able to copy various materials on the manufacture of cocaine at a New York library. By his own admission, respondent assisted a man whom he knew to be a fugitive and a drug dealer.

## II.

These facts inform our decision as to the nature of discipline to be imposed. Discipline should reflect the gravity of the ethics transgression as counterbalanced by any relevant mitigating circumstances.

Respondent has admitted his active participation in a criminal narcotics conspiracy. Convictions of attorneys for crimes of an equally serious nature have resulted in disbarment in New Jersey. *See In re Ivler,* 86 *N.J.* 398 (1981); *In re Warner,* 43 *N.J.* 254 (1964). Other jurisdictions have concluded that an attorney's conviction on charges of conspiracy to distribute and to possess with intent to distribute a controlled dangerous substance requires disbarment. *See Louisiana State Bar Ass'n v. Bensabat,* 378 *So.*2d 380 (La.1979); *Matter of Glasser,* 53 *A.D.*2d 38, 385 *N.Y.S.*2d 86 (1976); *In re Berlant,* 458 *Pa.* 439, 328 *A.*2d 471, 474 (1974); *Muniz v. State,* 575 *S.W.*2d 408 (Tex.Civ.App.1978). Some have considered that such crimes are morally reprehensible and involve moral turpi-

tude. *E.g., Muniz v. State, supra,* 575 *S.W.*2d 408. Others have stressed that such crimes "demonstrate such a grave lack of fidelity to the lawyer's duty to uphold and respect the laws as to require disbarment in order to protect the public and the administration of justice." *Louisiana State Bar Ass'n v. Bensabat, supra,* 378 *So.*2d at 383; *Matter of Gorman,* 269 *Ind.* 236, 379 *N.E.*2d 970, 972 (1978).

It must be emphasized that respondent actively utilized his professional license and his legal skills as an attorney to violate the law. It is obvious that where, as in this case, an attorney's criminal deeds directly involve his law practice, the misconduct is even more egregious in the disciplinary context.

Moreover, respondent was not an inexperienced or untried young attorney at the time of his criminal activities. Respondent was admitted to the New York bar in 1966 and the New Jersey bar in 1969. As observed in another case: "These are not the acts of an experimenting youth. Respondent actively engaged himself in the introduction of a controlled dangerous substance into a market place that, unfortunately, is too often occupied by children and adolescents." *Matter of Gorman, supra,* 379 *N.E.*2d at 971–72.

There are mitigating factors in this case. The sentencing court found that respondent's actions were an aberration. The court further stated that it was also influenced by the precarious health of respondent's daughter, noting that the doctors had advised that separation of the father from the home could result in a relapse for the young girl. Nevertheless, in imposing sentence, the sentencing court acknowledged that courts have "[few] ways to stop this tragic drug sickness except by making a statement through sentence." While noting that an element in this sentencing was the extent of the tragedy that had affected respondent's children, the court added that

so too is the tragedy that has affected the children of thousands and thousands of families who have become hooked on this filth that is pervading.

The Board also acknowledged mitigating factors, such as respondent's character in the community and his financial and family health situations. It nevertheless concluded that these did not override the seriousness of the aggravating factor of respondent's criminal behavior. The mitigating factors may have served to avoid a custodial sentence but did not obviate the need for disbarment. Indeed, the sentencing court took into account respondent's "almost certain disbarment" in opting for a non-custodial sentence. As the DRB observed in recommending disbarment, "any lesser discipline would depreciate the seriousness of the offense and would not act as a deterrence against the distribution and use of controlled dangerous substances. Drug pushers should get no support, either directly or indirectly, from the legal profession."

We agree. Several considerations draw into the same conclusion. By his voluntary and knowing participation in a conspiracy to distribute and to possess with intent to distribute a controlled narcotic substance, respondent has failed to uphold the minimum standards of honesty, uprightness, and fair dealing of a member of the bar. The conspiracy evidenced continuing and prolonged, rather than episodic, involvement in crime. The object of the conspiracy constituted a direct threat to society, as well as the indirect, albeit real, harm to persons who eventually would be mired in drugs. The crime quite obviously involved dishonesty, deceit and a contempt for law. Moreover, respondent was motivated by personal greed, and further, he used his professional status and skills as a lawyer to assist in the engineering of the criminal scheme.

Respondent's conduct demonstrates his lack of fitness to be a lawyer and his unsuitability to be entrusted with the privileges and duties of the legal profession. Disbarment, the strongest sanction available, must be imposed in order to preserve the integrity of the bar. Moreover, the public must be protected from attorneys, such as respondent, who are unable to resist the opportunities for dishonesty which the practice of law often presents. That a lawyer, a representative of the profession

sworn to honor and uphold our laws, would participate and profit from the illicit drug trade is unconscionable. Both the public and the bar are entitled to be assured that such an attorney will never return to the profession. *See Matter of Templeton,* 99 *N.J.* 365, 376 (1985).

Respondent is disbarred. We direct that he reimburse the Ethics Financial Committee for administrative costs.

So ordered.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.

## ORDER

It is ORDERED that GERALD M. GOLDBERG of PARSIP-PANY, who was admitted to the bar of this State in 1969, be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that GERALD M. GOLDBERG be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with disbarred attorneys; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.