IN THE MATTER OF JOHN H. MCCANN, III, AN ATTORNEY AT LAW.

Decided June 7, 1988.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that JOHN H. McCANN, III, of YORK, PENNSYLVANIA, who was admitted to the Bar of this State in 1974, be disbarred, and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and respondent is disbarred; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said JOHN H. McCANN, III, as an attorney at law of the State of New Jersey; and it is further

ORDERED that JOHN H. McCANN, III, be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with disbarred attorneys; and it is further

ORDERED that JOHN H. McCANN, III, reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

### *Decision and Recommendation of the Disciplinary Review Board*

This matter is before the Board on a Motion for Final Discipline Based upon a Criminal Conviction filed by the Office of Attorney Ethics (OAE). *R.* 1:20–6(b)(2)(i).

On October 28, 1986, respondent pleaded guilty to the following multiple counts of two federal indictments: five counts of possession of cocaine with intent to distribute, in violation of 21 *U.S.C.* § 841(a)(1) as well as aiding and abetting such possession with intent to distribute, in violation of 18 *U.S.C.* § 2; one count of engaging in a continuing criminal enterprise, in violation of 21 *U.S.C.* § 848; three counts of income tax evasion, in violation of 26 *U.S.C.* § 7201; two counts of conspiracy to defraud and commit offenses against the United States by impeding, impairing, obstructing and defrauding the lawful functions of the Internal Revenue Service (IRS), the Department of Justice and the Customs Service, in violation of 18 *U.S.C.* § 371; two counts of subscribing a false income tax return, in violation of 26 *U.S.C.* § 7206(1); one count of concealment of income from the IRS, in violation of 18 *U.S.C.* § 2, and two counts of filing false corporate income tax returns, in violation of 26 *U.S.C.* § 7206(1).[1] The facts are as follows.

Respondent was admitted to the bar of this State in 1974. He was apparently involved in many business ventures since then, but never practiced law.

At some point in 1981, respondent became involved in illegal activities with his brother-in-law. These ventures involved the purchase of more than two or three kilograms of cocaine in various South American countries and the smuggling of that

---

[1] On May 23, 1986, respondent had pleaded guilty to possession of false identification documents with intent to defraud the United States, in violation of 18 *U.S.C.* § 1028(a)(4), in the United States District Court, Western District, Washington. This conviction is not the subject of the instant motion.

cocaine into the United States by truck or automobile through the Mexican American border, by ship into South Florida or by airplane into several airports in the United States. The cocaine was intended for distribution in Michigan.

Respondent worked as the logistics person, who arranged for the transportation to smuggle the cocaine into the United States. He, as well as his brother-in-law, used foreign and domestic corporations to screen their activities.

Respondent and his coconspirators never reported the income they received from the sale of cocaine. Respondent filed false income tax returns for 1982, 1983 and 1984. In 1984, he also used cash in many transactions, specifically to avoid detection by the IRS. He secretly moved large quantities of cash in and out of the United States. Respondent also filed returns for two corporations in 1984. These corporations had no legitimate activity, although the returns stated otherwise.

On October 28, 1986, respondent entered guilty pleas to nine counts of an indictment issued by a Michigan Grand Jury and five counts of an indictment issued in Pittsburgh. As part of the plea agreement, respondent agreed to give complete and truthful statements, to testify at any subsequent grand jury proceedings or trials, to forfeit all assets acquired as a result of his illegal cocaine activity and to take a polygraph test concerning these assets. In return for respondent's guilty pleas, the Government granted him immunity from further prosecution for any offenses not already encompassed in the two indictments and agreed to dismiss all charges against respondent's wife.

On March 11, 1987, defendant was sentenced to an aggregate life term of imprisonment without parole. The Court's reasons are as follows:

> You, [respondent], are very talented, very gifted, very blessed. You were first in your class in college; double majors, economics and history. I think that's irony, economics and history, in light of the charges that bring you before this Court. You well know what this nation stands for.

You had two national honors scholastic awards. You were in the top 10 percent of your law class. Your wife was first. You were an aide to a United States Senator; Mayor of your hometown in New Jersey; you were a surrogate Probate Judge.

You are a business genius. You had condominium ventures, coal mines, promoted publicly traded companies. You had ventures which included coal, gas, oil, in Columbia, Equador; private jets, helicopters, vacations, country clubs; shrimp farms in Panama; modular housing in Panama; pipeline supplies, helicopter sales in South America; slot machines in Columbia, Equador, Costa Rica and Mexico; toys, shoes, Mexican imports, South American imports; military supplies to Equador, Bolivia. All of these ventures, many successful; many didn't come to fruition. Your goal was to provide for your family and yourself.

Throughout everything you wrote me, I could find nothing that persuaded me that you have really yet faced what you have done in terms of the untold numbers of persons who are probably suffering more than you and your family are today. We'll probably never know what you have been responsible for.

No excuse can be made for you, [respondent]. You knew. If anyone knew, you did. You are a persuasive man. You have been politically successful. To even suggest that your role in this is peripheral is really a sham for the whole process. Many of these things would never have happened but for your role in this.

For the longest time your were a fugitive. And as much as you suggest you love your wife and your children, you moved them from country to country, using phony identifications, imposing on them lifestyles and anxieties during very formative years.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

And I, and everyone in this courtroom must ask you, at what cost to society would you provide for your family, [respondent]? Is everyone and everything expendable?

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

Your involvement in this is really pure greed. Whatever your motive in terms of providing for your family or your love for them, it was pure greed. You could settle for nothing less than what you thought to have, and I believe it was everything.

We'll never be able to measure what you have done. The very society that you would have your daughters grow up in will suffer for, I would say, all their days because of the cocaine that has been introduced into society. Many, many persons will never be productive members of society and you did that, [respondent]. [ST21–14 to 24–7].[2]

---

[2]ST denotes the transcript of the sentencing proceeding before the Honorable Barbara K. Hackett, U.S.D.J., Southern Division, Eastern District, Michigan on March 11, 1987.

On April 18, 1987, respondent consented to disbarment from the bar of the Commonwealth of Pennsylvania. On May 21, 1987, respondent was temporarily suspended from the practice of law in New Jersey. On July 21, 1987, the OAE filed this Motion for Final Discipline. The OAE recommends respondent be disbarred.

## CONCLUSION AND RECOMMENDATION

A criminal conviction is conclusive evidence of respondent's guilt in disciplinary proceedings. *Matter of Goldberg,* 105 *N.J.* 278, 280 (1987); *Matter of Tuso,* 104 *N.J.* 59, 61 (1986); *In re Rosen,* 88 *N.J.* 1, 3 (1981); *R* 1:20–6(b)(2)(i). Therefore, no independent examination of the underlying facts is necessary to ascertain guilt. *In re Bricker,* 90 *N.J.* 6, 10 (1982). The only issue to be determined is the quantum of discipline to be imposed. *Matter of Goldberg, supra,* 105 *N.J.* at 280; *Matter of Kaufman,* 104 *N.J.* 509, 510 (1986); *Matter of Kushner,* 101 *N.J.* 397, 400 (1986); *In re Addonizio,* 95 *N.J.* 121, 123–124 (1984); *In re Infinito,* 94 *N.J.* 50, 56 (1983); *In re Rosen, supra,* 88 *N.J.* at 3; *In re Mirabelli,* 79 *N.J.* 597, 602 (1979); *In re Mischlich,* 60 *N.J.* 590, 593 (1972).

Respondent's convictions establish that he engaged in dishonesty, fraud, deceit and misrepresentation that adversely reflected on his fitness to practice law. His actions violated *DR* 1–102(A)(3) and (4) and succeeding *RPC* 8.4(b) and (c).[3]

An attorney is obligated to adhere to the high standard of conduct required of every member of the bar, even when his activities do not directly involve the practice of law. *Matter of Rutledge,* 101 *N.J.* 493, 498 (1986); *Matter of Huber,* 101 *N.J.* 1, 4 (1985); *In re Suchanoff,* 93 *N.J.* 226, 230 (1983); *In re*

---

[3]Respondent's conduct occurred both before and after the effective date of the Rules of Professional Conduct, September 10, 1984.

*Franklin*, 71 *N.J.* 425, 429 (1976); *In re Carlson*, 17 *N.J.* 338, 347 (1955); *In re Genser*, 15 *N.J.* 600, 606 (1954). Any misbehavior, private or professional, which reveals lack of the good character and integrity essential for an attorney, constitutes a basis for discipline. *In re La Duca*, 62 *N.J.* 133, 140 (1973).

Respondent's admission to active participation in a large-scale and prolonged criminal narcotics conspiracy is one of the most serious crimes imaginable for an attorney. Such crimes are morally reprehensible. *Matter of Goldberg, supra*, 105 *N.J.* at 281. They "demonstrate such a grave lack of fidelity to the lawyer's duty to uphold and respect the laws as to require disbarment in order to protect the public and the administration of justice." *Louisiana State Bar Ass'n v. Bensabat*, 378, *So.*2d 380, 383 (La.1979) (quoted in *Matter of Goldberg, supra*, 105 *N.J.* at 282).

The sentencing court found no mitigating factors in this case. Respondent could have been a positive force in society. He chose instead to throw away all opportunities and pursued selfish ventures. His sole motivation was greed. Moreover, many people have already been and will continue to be injured by respondent's misconduct. Hence, the aggravating factors outweigh any mitigating ones.

> [T]he public must be protected from attorneys, such as respondent, who are unable to resist the opportunities for dishonesty which the practice of law often presents. That a lawyer, a representative of the profession sworn to honor and uphold our laws, would participate and profit from the illicit drug trade is unconscionable. Both the public and the bar are entitled to be assured that such an attorney will never return to the profession. [Citation omitted.] *Matter of Goldberg, supra*, 105 *N.J.* at 283–284.

The Board unanimously concludes that respondent's conduct demonstrates an appalling lack of honesty and fitness to practice law. The Board recommends respondent be disbarred. The Board also recommends respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.