STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Roger L. McMILLIAN, Respondent.

S.C.B.D. No. 3469.

Supreme Court of Oklahoma.

Jan. 31, 1989.

Gloria Miller White, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Paul M. Vassar and Cynthia J. Ferrell, Chandler, for respondent.

LAVENDER, Justice.

This is a bar disciplinary proceeding brought against Respondent, Roger L. McMillian by Complainant, the Oklahoma Bar Association. The Amended Complaint charged Respondent with two separate counts of professional misconduct. Count I charged violation of DR–1–102(A)(4), DR–7–102(A)(3), (5) and (6) and Count II violation of DR–1–102(A)(4) and DR–7–102(A)(5) of the Code of Professional Responsibility, 5 O.S.1981, Ch. 1, App. 3. These provisions provide as follows:

#### DR 1–102. Misconduct

(A) A lawyer shall not:

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

#### DR 7–102. Representing a Client Within the Bounds of the Law

(A) In his representation of a client, a lawyer shall not:

. . . .

(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

. . . .

(5) Knowingly make a false statement of law or fact.

(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

Count I of the Amended Complaint charged Respondent with misrepresenting to a state judge and opposing counsel in a small claims case, both by written pleading and in open court, that a bankruptcy action had been filed on behalf of Respondent's clients in the small claims case when, in fact, no such action had been filed. Count I also charged Respondent with failing to inform the judge handling the small claims case that the bankruptcy action *had not* been filed after it became clear that the proceeding was not filed on or about the date Respondent had represented in a written Motion to Stay filed in the case. Count II charged Respondent with misrepresenting to a now retired state trial judge and opposing counsel in open court in a state court case involving an open account that a bankruptcy proceeding had been filed on behalf of his client when it had not been so filed. The misrepresentations, according to Complainant, were made in order to obtain stays of the state cases on behalf of Respondent's clients who were defendants in both cases.

The Trial Panel in its written Findings of Fact, Conclusions and Recommendations found that in neither case did Respondent intentionally mislead the judge or opposing counsel involved. Instead, the Panel found, without reliance on any specific disciplinary rule, that Respondent was unintentionally neglectful in failing to go to the involved judge in the small claims case prior to being notified by Complainant that his conduct was under investigation to inform her that bankruptcy had not been filed. As to Count II the Panel found Respondent unintentionally neglectful in not filing a bankruptcy action more promptly than it eventually was filed *or* in not advising the judge and opposing counsel that the filing was delayed because more preparation was necessary. The Panel recommended discipline in the form of a private reprimand and that Respondent pay the costs incurred in this proceeding. The Panel further recommended that Respon-

dent maintain tighter control over his case load and staff.

The Complainant asserts before this Court that Respondent was guilty of the misconduct of misrepresentation and that we should impose a one-year suspension. Respondent asserts as to Count I that he was guilty, at most, of an honest mistake and that Complainant wholly failed to prove its case against him as to Count II. Respondent also asserts as a legal proposition that Complainant was required to prove, apparently as to any of the rule violations charged, that he was motivated by bad or evil intent. He contends no such intent was shown. At the conclusion of the May 2, 1988 evidentiary hearing the Trial Panel made a finding that no evil intent was evident. He, thus, initially requests no disciplinary sanction be imposed or, alternatively, if violation be found that the Panel's recommendation of a private reprimand be imposed. After an independent review of the entire record in this matter we conclude that Complainant proved by clear and convincing evidence that Respondent violated DR-7-102(A)(3) as charged in Count I of the Amended Complaint and DR-1-102(A)(4) and DR-7-102(A)(5) as charged in Count II. We further conclude that Complainant failed in its burden of proof as to the other disciplinary rule violations charged. We have further determined, based upon the facts and circumstances involved in this case and certain mitigating evidence, that Respondent should be publicly reprimanded for the misconduct found to exist and he should be ordered to pay the costs of these proceedings.

## STANDARD OF DETERMINATION IN BAR DISCIPLINARY PROCEEDINGS

 In disciplinary proceedings involving attorneys this Court's determinations are made *de novo*.[1] In that we are a licensing court acting in the exercise of our exclusive original jurisdiction neither the findings of fact of the Trial Panel nor its view with respect to the weight of the evidence and the credibility of witnesses is binding on this Court.[2] Neither the findings of fact nor the conclusions of law of the Trial Panel carry a presumption of correctness here.[3] Even though the Trial Panel's recommendations are accorded great weight such recommendations are merely advisory because the ultimate decision-making authority in bar disciplinary matters rests squarely with this Court.[4] With these principles in mind we turn to a discussion of each of the counts as charged against Respondent via the Amended Complaint, the Trial Panel's apparent view of the evidence in relation thereto and our view.

## COUNT I

In regard to the situation involved in Count I certain matters are essentially undisputed. On or about November 24, 1986 a small claims case was filed in the small claims division of the District Court of Payne County. The case was based on failure to pay lot rent for space in a mobile home park. The case style was *Jim Campbell and Associates v. Tom Deaton and Jean Deaton*, SC–86–1171. Special Judge Lois L. Belden was assigned to the case. The matter was set for December 10, 1986 at 9:00 a.m. on Judge Belden's small claims docket. Respondent, a sole practitioner, was retained by the Deatons on December 3, 1986 who indicated to him they were in a bad financial posture. Respondent was made aware of the pendency of the small claims case and it was determined that bankruptcy would be filed. A Motion to Stay signed by Respondent was filed in the small claims case at 4:20 p.m. on December 9, 1986 asserting that a voluntary petition in bankruptcy had been filed by the Deatons on or about December 9, 1986. In actuality, the bankruptcy petition was not filed until January 22, 1987.

1. *State ex rel. Oklahoma Bar Association v. McNaughton,* 719 P.2d 1279, 1282 (Okla.1986).

2. *State ex rel. Oklahoma Bar Association v. Raskin,* 642 P.2d 262, 265 (Okla.1982).

3. *State ex rel. Oklahoma Bar Association v. Braswell,* 663 P.2d 1228, 1230 (Okla.1983).

4. *State ex rel. Oklahoma Bar Association v. Samara,* 683 P.2d 979, 984 (1984).

The initial factual dispute as relating to the misconduct charged revolves around whether Respondent knew when the Motion to Stay was filed that the bankruptcy petition would not be filed on the 9th of December or, at the latest, on December 10, 1986. The only direct testimony concerning this factual dispute came from Respondent.

According to Respondent the Deatons were to come into his office to sign the bankruptcy petition mid-to-late afternoon on December 9th. Evidently, just prior to said time, Respondent had finalized preparation of the necessary papers for the Deatons' signatures and they had been contacted upon such finalization. In that the papers were already prepared from information previously furnished it was not necessary for Respondent to meet with the clients on the 9th. At this point in time in the mechanics of obtaining signatures and filing, Respondent routinely relied on a staff person. Thus, Respondent testified he did not know by the end of the day on the 9th that the Deatons had not been to his office on said day nor that they had failed to execute the necessary papers. It turned out, of course, that they had not appeared on said day. Even though the record does appear to disclose that it would have been unlikely that the bankruptcy petition could have been filed in the United States Bankruptcy Court for the Western District of Oklahoma on December 9, 1986 given the time the Deatons were to appear at Respondent's office in the afternoon hours, the record as a whole indicates Respondent, at the time of filing the Motion to Stay, had every intention of having the bankruptcy petition filed no later than December 10th. In fact, Respondent's own testimony discloses that he anticipated the petition would be mailed to the federal court on December 9th at the time the Motion to Stay was filed in the late afternoon and would probably not be filed until December 10, 1986.[5]

Given the situation then existing and Respondent's reasonable expectation that the bankruptcy papers would be mailed for filing on the 9th, we do not think a violation of any of the rules charged in Count I was proved by Complainant by clear and convincing evidence in conjunction with the *mere* filing of the Motion to Stay coupled with the failure to have the bankruptcy petition filed on the 9th or the 10th.[6] Although we believe an attorney must strive to be as precise and accurate as possible when making factual assertions in documents filed with a court, in light of the language used in the Motion to Stay of filing the bankruptcy petition, *"[O]n or about* the 9th day of December, 1986," had the papers actually been mailed for filing on that date, as Respondent thought they would be when the Motion to Stay was filed, the bankruptcy petition would have been filed on or about the 9th, i.e. on December 10, 1986. In that at the time of filing the Motion to Stay the evidence appears to show Respondent in good faith believed the bankruptcy petition would be filed on the 10th we do not believe any rule violation involving misrepresentation is borne out up to this point in time as charged in Count I.[7]

The second factual dispute relating to a purported disciplinary rule violation concerns whether Respondent was present in Judge Belden's courtroom at 9:00 a.m. on December 10, 1986, the time at which the small claims case was set to be heard. Opposing counsel in the case, Lowell Barto, testified that at such time he informed

---

5. The record does not disclose definitively whether a staff person of Respondent would have driven to Oklahoma City from Stillwater (situs of Respondent's office) to file the bankruptcy papers in federal court had the Deatons appeared early enough in the afternoon of December 9, 1986 to make filing in such manner practical or, for that matter, possible. A direct question of this nature was not asked of Respondent.

6. Complainant has the burden of proving the charges in a bar disciplinary proceeding by clear and convincing evidence. *State ex rel. Oklahoma Bar Association v. Braswell,* 663 P.2d at 1232, supra f.n. 3.

7. *In Re Champion,* 24 Okl. 154, 103 P. 600 (1909) (an attorney who in good faith makes a factual assertion in a pleading believing it to be true when made is not guilty of misrepresentation to a court).

Judge Belden that it was his understanding the Deatons had filed for bankruptcy based upon his receipt the day before of the Motion to Stay. He further testified that Respondent was in the courtroom (although not necessarily appearing for that specific case) and that he acknowledged by either nodding his head or saying something like "that's correct" in response to Mr. Barto's statement to Judge Belden.

Respondent testified that although he was in Judge Belden's court for an 8:30 a.m. docket he does not believe he was there during the statement of Mr. Barto to the court. Certified copies of the December 10, 1986 small claims docket and the minute docket for SC–86–1171 reflect opposing counsel's appearance, but not the appearance of Respondent at the 9:00 a.m. setting.

Judge Belden did not testify. Her testimony was submitted by written stipulation. The stipulation indicates she granted a stay based on the written motion. The stipulation further indicates that it would be possible that Respondent was present in the courtroom, but not participating in the hearing and, therefore, the court minute reflecting that the Deatons did not appear would be correct. The stipulation, however, sheds no definitive light on whether Respondent was or was not present during Mr. Barto's statement.

The Trial Panel obviously resolved this factual dispute in favor of Respondent. They must have determined that Respondent was not in the courtroom during Mr. Barto's statement and that he did not either acquiesce or affirm the statement in open court. This Court determines that the evidence, both testimonial and documentary, as to whether Respondent was present and as to what occurred in Judge Belden's courtroom on December 10, 1986, is equivocal. In that it is Complainant's burden to prove the charges brought by clear and convincing evidence we simply cannot find a violation on such equivocal submissions.[8]

The final issue as to Count I revolves around Respondent's failure to inform Judge Belden that a bankruptcy petition had not been filed as asserted in the Motion to Stay once he learned on December 10, 1986 that the bankruptcy papers were not so filed. The evidence on this point came from Respondent. Respondent's explanation was that he forgot about having filed the Motion to Stay. From our review of the record we simply do not believe that Respondent on December 10, 1986 could have forgotten he had filed a Motion to Stay given the short period of time from its filing on December 9th and the events involving the Deatons that transpired on December 10, 1986, as will be explained below.

Respondent's testimony was that on the morning of the 10th of December the Deatons came to his office and executed the bankruptcy papers. The bankruptcy petition was entered as an exhibit and it shows execution on the 10th. The Deatons left a two hundred fifty dollar ($250.00) check for the filing fee and a retainer. *Later that same day* the Deatons called Respondent's office indicating that the check was no good or would not clear their bank because of a utility bill they had to pay. In response to this call Respondent himself testified that he made the decision not to file the bankruptcy. At this instant it is clear beyond any doubt and we find that Respondent himself knew that bankruptcy had not been filed based on his own testimony. He also now knew the bankruptcy would not be filed on or about the 9th. We further simply do not believe at this point in time, which had to be no more than twenty-four (24) hours from the time the Motion to Stay was filed, that Respondent had forgotten he had filed a Motion to Stay indicating that he *had* filed a bankruptcy petition on or about the 9th of December.[9] Surely, on

---

**8.** In a bar disciplinary proceeding the burden is upon the party seeking our re-examination to show that the findings of the Trial Panel should not be accepted. *State ex rel. Oklahoma Bar Association v. Raskin*, 642 P.2d at 266, supra f.n.

**2.** We believe Complainant has failed in its burden.

**9.** Respondent further testified that he talked to one of the Deatons three to four times during the latter part of December to the early part of January 1987, the first of these telephone con-

December 10, 1986 Respondent knew he had represented in the Motion to Stay that bankruptcy had been filed on or about the 9th and he had an absolute duty to inform Judge Belden that the representation in the Motion to Stay was not correct. Although it may be true, as Respondent asserts, that he forgot about the Motion to Stay sometime after the 10th, his duty to inform Judge Belden of the erroneous representation therein was fixed on said date. We thus believe Complainant, by clear and convincing evidence, proved as to Count I that Respondent violated DR–7–102(A)(3) by knowingly failing to disclose that which he was required by law to reveal and that appropriate discipline must be imposed.

## COUNT II

The situation involved in the second count of the Amended Complaint also involves a representation of Respondent concerning the filing of a bankruptcy petition. Respondent was representing a defendant in a state court civil case in a dispute involving an open account. After the matter had been pending for some time the case appeared on a November 6, 1986 Payne County motion docket for a non-jury trial.[10] Opposing counsel, John Thomas Severe, testified that Respondent at this motion docket informed the trial judge, now retired Judge Ray Wall, that a bankruptcy petition *had* been filed. Mr. Severe further testified that while still in the courtroom he asked Respondent when bankruptcy had been filed. He testified that Respondent told him the previous Friday, which would have been October 31, 1986. A contemporaneous note contained on the November 6th motion docket sheet *and* a hand-written note of Mr. Severe prepared at his office on the 6th were also introduced into evidence. These documents show Respondent indicat-

ing to Mr. Severe that his client's bankruptcy *was* filed on October 31st.[11] A certified copy of the docket sheet in the case is consistent with Mr. Severe's testimony and his hand-written notations. It provides the following entry for November 6, 1986, "Parties appear in open court [and] announce that the defendant has filed bankruptcy." Mr. Severe's client also testified that he heard Respondent announce to Judge Wall that a bankruptcy *had* been filed.

Judge Wall testified before the Trial Panel. The November 6, 1986 motion docket was apparently his last as a judge. He retired in January of 1987. Judge Wall testified essentially that he did not believe Respondent had told him bankruptcy had been filed or that Respondent would lie to him. Judge Wall was also of the opinion that Respondent was "very honest" and that at no time had he had an experience where Respondent was dishonest with him. Judge Wall also testified that he did not set the case for non-jury trial on November 6th and that even if it had been set for non-jury trial he would not have tried the matter, but would have set the case for a date certain in the future. Judge Wall further testified that he had more difficulty with accuracy as to court minutes in Payne County than in other places he presided and with the particular court clerk then in office. He, however, did not know whether the docket entries in the involved case were accurate or not. Finally, Judge Wall testified he would not have proceeded with a case if he was informed *either* that a bankruptcy was imminent or had, in fact, been filed.

Respondent basically testified that it was his *belief* that he told Judge Wall that he would be filing bankruptcy. He further

---

versations occurring approximately one week after the 10th of December. Although Respondent may have put the Motion to Stay out of his mind, i.e. forgotten about it during these latter conversations, he had a duty on December 10, 1986 to make a mental note or some recordation of his erroneous representation to Judge Belden in the December 9th Motion to Stay and rectify it.

**10.** It should be noted that the state judge handling the case testified before the Trial Panel and his testimony seems to indicate the matter may have been erroneously set for non-jury trial by personnel of the Payne County court clerk's office.

**11.** Respondent in his brief filed in this Court does not attack the orders of the Trial Panel which admitted these documents.

testified he *did not think* he told opposing counsel bankruptcy had been filed. In fact, he testified he had no recollection of a separate conversation with Mr. Severe. It is undisputed that a bankruptcy petition was not filed on behalf of Respondent's client until January 9, 1987.

Based on all of the evidence introduced as to the purported misrepresentation involved in Count II we are convinced that Complainant proved by clear and convincing evidence that Respondent violated DR–1–102(A)(4) and DR–7–102(A)(5) by announcing to Judge Wall and opposing counsel that a bankruptcy petition had *already* been filed prior to November 6, 1986 when no such petition had been filed. Mr. Severe's testimony was unequivocal as to Respondent announcing to the court and to him that a bankruptcy had already been filed. We can discern from this record no reason that Mr. Severe would not be truthful.[12] In contrast, the testimony of Respondent was more equivocal and we simply cannot credit it as to the allegations made against him in Count II.

### REQUIREMENT OF INTENT

Our discussion of a requirement of bad or evil intent will be limited to DR–1–102(A)(4), DR–7–102(A)(3) and (5). The only case relied on by Respondent in support of his contention that bad intent must be shown is *In Re May,* 538 P.2d 787, 96 Idaho 858 (1975). *In Re May,* in addition to other violations, charged an attorney with fraudulent and deceitful conduct toward a client in relation to the attorney's acquisition of real and personal property owned in part by the client he was representing in a divorce action. The Idaho Supreme Court determined that the evidence in said case failed to clearly show the attorney was guilty of fraudulent and deceitful conduct and, in fact, noted the client had testified that she did not believe the attorney intended to defraud her, but was acting as a friend. The evidence on such point was further ambiguous. It was in such context our brethren in the Idaho Supreme Court noted that bad intent must clearly be shown to make out a violation of fraudulent or deceitful conduct on the part of an attorney toward his client.

None of the disciplinary rules which we have determined were violated by Respondent have a specific requirement that the conduct involved therein be motivated by bad or evil intent. As to the violation found to exist in Count I, DCR–7–102(A)(3) requires only that Respondent not conceal or *knowingly* fail to disclose that which he is required by law to reveal. We believe said rule does not require a showing of bad or evil intent, i.e. that the attorney was motivated by some bad purpose, in failing to reveal information he has a duty to disclose. We further believe no inquiry need be made as to motivation, except possibly as to the appropriate punishment. In this case for violation of said rule to be made out it was only necessary to show by clear and convincing evidence that Respondent had actual knowledge that a material erroneous statement had been made in his Motion to Stay concerning the filing of the bankruptcy petition which had been utilized to gain a stay of the small claims case.[13]

---

**12.** Although questions were asked of Mr. Severe by Respondent's counsel that appeared to be an attempt to show a motive for fabrication on Mr. Severe's part, i.e. to gain some monetary relief for his client in regard to the underlying civil case, the questions were ambiguously framed and neither the questions asked nor answers given convince us that fabrication occurred. Further, nothing else in the record leads us to conclude that Mr. Severe's testimony was anything but truthful.

**13.** See *State ex rel. Oklahoma Bar Association v. Hensley,* 661 P.2d 527, 528–530 (Okla.1983). Although not expressly stated in *Hensley,* we believe a fair reading of said case stands for the proposition that as long as a lawyer representing a client has actual knowledge of a material misrepresentation or omission to a court, such lawyer may not conceal the misrepresentation nor fail to disclose the material fact even though said lawyer is ignorant of a law which would require disclosure. *Id.* at 529. *Hensley,* in part, involved a lawyer in a probate proceeding failing to disclose the whereabouts of a decedent's minor son, even though the attorney had knowledge of the son's whereabouts. Although in many and probably most situations a lawyer will be motivated by bad intent, e.g. a conscious attempt to gain some unfair advantage over an adversary, proof of such motive is simply not a necessary requirement under DR–7–102(A)(3).

Although we have found the Complainant proved by clear and convincing evidence only that Respondent had actual knowledge of his erroneous statement on December 10, 1986 (in light of his testimony that he at some time forgot about having filed the Motion to Stay), actual knowledge, even for such a short period of time, is sufficient to make out a violation in view of Respondent's clear duty to rectify the situation.

■ Our view of DR–7–102(A)(5) as to motivation is similar to DR–7–102(A)(3). As long as the lawyer has actual knowledge of a false statement of law or fact no inquiry need be made as to his motivation for making the false statement to show a rule violation. The lawyer will be amply protected if he in good faith believes his statement to be true.[14]

■ In regard to DR–1–102(A)(4) our view is somewhat different. We believe said rule is generally geared toward fraudulent conduct, although not necessarily conduct of a respondent in his role as an advocate. As such bad or evil intent or its equivalent must be shown by clear and convincing evidence in order to make out a violation. In this case we believe fraudulent or deceitful conduct was so shown and that Respondent's statements to both Judge Wall and to Mr. Severe were motivated by his desire to have the case stricken from the November 6th motion docket and to avoid Mr. Severe pressing his claim for a hearing or trial of the matter. Although the evidence as to Respondent's motivation was largely circumstantial we believe the record as a whole proves by clear and convincing evidence that Respondent misrepresented a fact to both Judge Wall and opposing counsel in an effort to

gain an unfair advantage for his client.[15] It was made in order to lull Mr. Severe into inaction and to have Judge Wall stike the case from its November 6th setting. DR–1–102(A)(4) prohibits such conduct and such conduct cannot go unpunished.

## DISCIPLINE

The primary purpose in disciplinary proceedings is not to punish the involved attorney, but to inquire into a practitioner's continued fitness to practice law in an effort to protect the interests of the public, the legal profession and the courts.[16] Another purpose is, of course, to deter a respondent from committing similar acts in the future and to act as a restraining vehicle upon others who might consider committing similar acts.[17]

■ In deciding the discipline to be imposed in a case such as this the Court would be remiss in its duty if it did not consider evidence of Respondent's good character and reputation and his exemplary professional and community standing for a considerable length of time.[18] Respondent has been an attorney for approximately fifteen (15) years and had an unblemished record before the instant matters arose. Testimony was adduced that he was involved in numerous religious, civic and charitable organizations, including serving as president of the Payne County Bar Association and State Association of Municipal Attorneys. He also served as a past city attorney for Stillwater. At the time of the disciplinary hearing he was chairperson of the Board of Trustees at the First United Methodist Church in Stillwater. He has been on the Board of Directors of the Still-

The *act* of concealment or failure to disclose coupled with actual knowledge of a material fact and a duty to disclose are the only pertinent elements for violation of such rule in our view.

**14.** *In Re Champion,* supra f.n. 7.

**15.** Actionable fraud involves a false material representation that is made as a positive assertion either known to be false or made recklessly without knowledge of the truth with intention that it be acted upon and which is acted upon by a party to his/her detriment. *Tice v. Tice,* 672 P.2d 1168, 1171 (Okla.1983). We express no

view as to whether in every conceivable factual situation all of the elements of actionable fraud need be shown to make out a violation of DR–1–102(A)(4).

**16.** *State ex rel. Oklahoma Bar Association v. Raskin,* 642 P.2d at 267, supra f.n. 2.

**17.** *State ex rel. Oklahoma Bar Association v. Hall,* 567 P.2d 975, 978 (Okla.1977).

**18.** *State ex rel. Oklahoma Bar Association v. Steger,* 433 P.2d 225, 227 (Okla.1966).

water United Way and been a member of the Stillwater YMCA Foundation. Five character witnesses were presented, including Judge Wall, all of whom testified to Respondent's good reputation. These witnesses included a President Emeritus of Oklahoma State University, a state representative and a Dr. John Rusco who had served with Respondent on various civic and religious organizations.

In view of Respondent's previous unblemished professional record over a period of fifteen (15) years and the other mitigating evidence presented, we conclude that the imposition of a public reprimand is an appropriate disciplinary sanction in this case. Respondent is further required to pay the costs of this proceeding in the amount of $1,004.16 within thirty (30) days after this opinion becomes final.

Upon the publication of this opinion in the official reporter Respondent shall stand publicly reprimanded.

HARGRAVE, C.J., and HODGES, DOOLIN, KAUGER and SUMMERS, JJ., concur.

OPALA, V.C.J. concurs in part, dissents in part, with whom SIMMS, J. joins: I concur in imposing professional discipline; I dissent from the public reprimand sanction. I would impose a 90–day suspension.