STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Harvey Russell WRIGHT, Jr.,
Respondent.

OBAD No. 825.
SCBD No. 3477.

Supreme Court of Oklahoma.

May 8, 1990.

## ORDER

Upon consideration of the above styled and captioned cause, THE COURT FINDS THAT:

1) The respondent, Harvey Russell Wright, Jr., was indicted on 26 counts of distributing and possessing cocaine and distributing and possessing marihuana. After a plea bargain agreement was reached, Wright pleaded guilty to one count of distributing cocaine to two friends in a social setting in Cause No. CR–87–97–D in the United States District Court for the Western District of Oklahoma. This Court issued an order of interim suspension on February 3, 1988.

2) This admission demonstrates his unfitness to practice law within the meaning of 5 O.S.1981 Ch. 1, App. 1–A, Rule 7.1, and after an evidentiary hearing, the Professional Responsibility Tribunal recommended that the respondent be suspended from the practice of law for a period of two years, ending September 2, 1989, and that he pay the costs of these proceedings. After payment, the panel recommended that the respondent be reinstated.

3) Wright agrees that suspension is warranted. He requests a suspension of two years or less to begin retroactively from June 10, 1987, the date he pleaded guilty. This case is distinguishable from *State ex rel. Oklahoma Bar Assoc. v. Armstrong,* 638 P.2d 1127, 1128 (Okla.1982) in which the attorney was disbarred for the distribution of cocaine. In *Armstrong,* the respondent was convicted of conspiracy to distribute cocaine and marijuana; aiding and abetting in the possession with intent to distribute; and possession with intent to distribute. He was sentenced to nine years in prison. Armstrong was requested to show cause why the final order of discipline should not be made. *Unlike Wright, he failed to respond to the order, and consequently, no evidence was presented by Armstrong in mitigation of the disciplinary matter.* Wright was convicted of one count, was sentenced to two years of prison and did respond to the show cause order. At the show cause hearing, attorneys and former clients testified that they would employ Wright as an attorney when he was reinstated to practice law. A former sheriff testified that during Wright's term as a District Attorney, he had been the most effective person to serve during the sheriff's term in office.

4) Wright's action demands discipline. We find that suspension from the practice of law rather than disbarment is an adequate indication that this Court will not condone such behavior. *State ex rel. Oklahoma Bar Assn. v. Denton,* 598 P.2d 663, 665 (Okla.1979). We also find, after a *de novo* review of the record, that

the clear and convincing proof supports the suspension of the respondent for two years and one day to begin from the date of this order rather than the shorter time frame suggested by the Professional Responsibility Tribunal. (In essence, the petitioner will be suspended from May 3, 1989, until May 4, 1992 instead of from May 3, 1989 until September 2, 1989 as suggested by the Professional Responsibility Tribunal.) *State ex rel. Oklahoma Bar Assoc. v. McMillian,* 770 P.2d 892, 897 (Okla.1989).

5) Even so, we note that reinstatement is not automatically granted upon the expiration of the suspension. Before any person is readmitted to the practice of law both the welfare of the public and the Bar must be considered. The process is a difficult one and the burden of proof rests with the applicant. The applicant must demonstrate that he has been rehabilitated before he can be readmitted. *Reinstatement of Cantrell,* 785 P.2d 312, 313 (Okla.1989).

6) The respondent is directed to pay the costs of these proceedings.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the respondent is suspended from the practice of law for two years and one day from the date of this order and ordered to pay the costs assessed in this proceeding.

HARGRAVE, C.J., and HODGES, LAVENDER, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, V.C.J., and SIMMS and DOOLIN, JJ., dissent.

OPALA, Vice Chief Justice, with whom SIMMS, Justice, joins, dissenting.

I dissent from the lenient discipline visited by today's decision. The gravity of the respondent's criminal misconduct prevents me from joining the court's order that imposes a two-year-and-one-day suspension. I would order the respondent disbarred.

The respondent, *admittedly a drug user* from 1983 to 1986, *became a state district attorney* in January 1987. On April 13, 1987 he was charged by indictment in the U.S. District Court for the Western District of Oklahoma with the crime of possession of cocaine (6 counts) and marijuana (9 counts); distribution of cocaine (8 counts) and marijuana (1 count); the felonious use of a telephone to arrange for the sale and distribution of cocaine (1 count), and the use of intimidation in an attempt to hinder communications between a federal law enforcement officer and another person relating to the commission or possible commission of a federal offense (1 count), in violation of 21 U.S.C. §§ 841(a)(1), 843(b) and 844(a) and 18 U.S.C. § 1512(a)(3). Twenty-five of the counts stem from activities occurring *before* respondent's term as district attorney; the charge of attempting to hinder communications with a federal officer was alleged to have taken place in April 1987, three months *after* he became a public official. It appears that, as part of an agreement reached with the federal prosecutor, all but one of the counts were dismissed on respondent's guilty plea to the single remaining count which charged him with *distribution of cocaine.* Sentenced to two years of confinement commencing September 2, 1987, respondent was also given a three-year "special parole." He served a one-year prison term *and his parole came to an end on September 2, 1989.*

Our primary task in disciplinary cases is to protect the public and to preserve *its* confidence in the legal profession as well as in the judicial authority that licenses lawyers. The maintenance of high standards of the Bar's fitness—intellectual and ethical—is *one of this court's heavy constitutional responsibilities.* Every licensed practitioner is held out to the public as a person worthy of confidence in the performance of legal services. If the licensee becomes unfit, it is this court's duty to withdraw from him (or her) its official endorsement for the public's *immediate protection.*[1]

In *State ex rel. Oklahoma Bar Ass'n v.*

---

1. *State, ex rel., Okl. Bar Ass'n v. Raskin,* Okl., 642 P.2d 262, 267 [1982].

*Armstrong* [2] the respondent was convicted, after a federal-court trial, of *conspiracy to distribute controlled dangerous substances* (marijuana and cocaine). We held that the commission of this crime demonstrates the offender's unfitness for the practice of law and ordered disbarment for the convicted lawyer. A legal practitioner's guilty plea to a single cocaine *distribution* charge in exchange for the dismissal of 25 other drug-related counts should not, in my opinion, be accorded less weight than the multi-count conviction of a lawyer who, when charged with similar penal code's violations, opted to defend against the charges. *Armstrong* is distinguishable from this case only in the punishment visited upon the offenders—not in the character of their criminal misconduct—namely, trafficking in dangerous drugs. Absent a plea bargain, Wright, much like *Armstrong,* would have placed himself within the range of a far greater penalty exposure. *No* circumstances are present here to militate in favor of *suspending* this respondent who was found guilty of *trafficking in drugs.* Because there is enough similarity between *Armstrong* and this case, I conclude this lawyer deserves no better treatment than that accorded the other offender.[3]

*No* lawyer who has been so recently discredited publicly, both as a State official in law enforcement service and as a licensed legal practitioner, should gain eligibility status for re-entry into the profession *less than five years after fulfilling the terms of a criminal sentence for a serious federal offense* that renders him unfit for practice. Maintenance of public confidence *in this court* as a licensing authority for lawyers and *in the Bar* as a whole demands a far more severe sanction to be imposed on *Wright.* The constitution's mandate, which calls upon this court to act in faithful stewardship of public interest, strongly counsels that the action taken today be *with utmost concern for the people's safety. Any other philosophical approach to the duty that is ours alone would inevitably allow the Bar's reinstatement process to degenerate into passing convicted lawbreakers through a routine of revolving-door re-admission.*

Because respondent's adjudicated criminal misconduct seriously undermines general public confidence in the Bar as a community of law-abiding professionals and in his own fitness for the practice, it warrants no less than disbarment.

**2.** Okl., 638 P.2d 1127 [1982].

**3.** Other jurisdictions, when visiting discipline for similar lawyer misconduct, have imposed severe sanctions. See *People v. Unruh,* 621 P.2d 948, 949 [Colo.1980] (a lawyer, who was charged with (a) using illegal drugs and narcotics, (b) conspiring to smuggle narcotics into the U.S. and (c) attempting to obstruct the administration of justice by agreeing to hide a fugitive, succeeded in negotiating a guilty plea to being a disorderly person; he was *disbarred* ); *Matter of Williams,* 248 Ga. 371, 283 S.E.2d 475 [1981] (*disbarment* was ordered for a lawyer who pled guilty to possession of marijuana with intent to deliver); *Committee on Professional Ethics v. Green,* 285 N.W.2d 17 [Iowa 1979] (a lawyer, charged with felonious delivery of cocaine, negotiated a guilty plea to a reduced charge of "accommodation controlled substance offense"; his *license was revoked* ); *Matter of Goldberg,* 105 N.J. 278, 520 A.2d 1147, 1149 [1987] (*disbarment* was ordered for a lawyer who entered a guilty plea to a federal felony charge of conspiring to distribute and to possess with intent to distribute a Schedule II controlled substance known as "speed"); *Office of Disciplinary Counsel v. Soucek,* 37 Ohio St.3d 42, 523 N.E.2d 513 [1988] (a lawyer, who negotiated a guilty plea to the charge of cocaine possession with intent to distribute, was *indefinitely suspended* from the practice of law); *Matter of Czura,* 279 S.C. 291, 306 S.E.2d 591 [1983] (*disbarment* was ordered for a lawyer who pled guilty to a federal felony charge of conspiring to import a large quantity of marijuana); *Matter of Lanier,* 279 S.C. 557, 309 S.E.2d 754 [1983] (a lawyer, charged with possession with intent to sell, deliver and manufacture marijuana, negotiated a guilty plea to felonious possession of that substance; he was *suspended indefinitely* ); *The Florida Bar v. Beasley,* 351 So.2d 959 [Fla.1977] (a lawyer convicted of delivering marijuana to a client was *disbarred* ); see also Narcotics Conviction as Crime of Moral Turpitude Justifying Disbarment or Other Disciplinary Action Against Attorney, 99 ALR3d 288 [1980].